William G. Myers III (ISB #5598)
Holland & Hart LLP
101 S. Capitol Boulevard, Suite 1400
Boise, Idaho 83702-2527
Telephone: (208) 342-5000
Facsimile: (208) 343-8869
Email: wmyers@hollandhart.com

ATTORNEY FOR PLAINTIFFS,
IDAHO WOOL GROWERS ASSOCIATION
AND DR. MARIE S. BULGIN

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IDAHO WOOL GROWERS ASSOCIATION, and DR. MARIE S. BULGIN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 08-cv-00394 |
| ED SCHAFER, in his official capacity as the Secretary of the United States Department of Agriculture, GAIL KIMBELL, in her official capacity as the Chief of the United States Forest Service, SUZANNE C. RAINVILLE, in her official capacity as the Forest Supervisor of the Payette National Forest, and UNITED STATES FOREST SERVICE | ) ) ) ) ) ) ) ) | **IWGA'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | ) ) ) | |

The Idaho Wool Growers Association ("IWGA") and Dr. Marie S. Bulgin (collectively "Plaintiffs" or "IWGA"), by and through their attorneys, Holland & Hart LLP, submit the following MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT.

## INTRODUCTION

Congress enacted the Federal Advisory Committee Act ("FACA"), 5 U.S.C. App. 2 §§ 1 *et seq.*, to ensure that advisory committees to federal agencies would be completely open to public observation and comment, and to ensure that such committees would be unbiased and not inappropriately influenced by their appointing authority. To these ends, FACA imposes stringent requirements on advisory committees subject to its provisions. Congress reinforced the importance of ensuring that advisory committees remain unbiased in the National Forest Management Act ("NFMA"), 16 U.S.C. § 1612(b).

Despite the clear mandate to establish and utilize advisory committees according to the requirements set forth under FACA and NFMA, the defendants (collectively "Forest Service") failed to adhere to these requirements when establishing and utilizing two advisory committees, the "RADT Committee" and "Payette Principles Committee" (collectively "Committees"). As a result, IWGA was unable to contemporaneously observe and comment on the Committees' meetings, and was prevented from timely accessing records used and prepared by the Committees. Further, because the Forest Service did not follow FACA and NFMA, IWGA was prevented from being a member of either of the Committees. Consequently, the Committees were not fairly balanced and were inappropriately influenced by the Forest Service. These violations of FACA and NFMA led to biased and unlawful advice and recommendations from the Committees that was captured in the "RADT Report" and "Payette Principles Report" (collectively "Reports").

The Reports, and the advice and recommendations of the Committees, have resulted in the Forest Service's closure of sheep allotments on the Payette National Forest (the "Payette") and Nez Perce National Forest and have improperly influenced the Forest Service's development of the Payette Revised Land and Resource Management Plan ("LRMP"). The biased advice and recommendations of the Committees are still being utilized to influence Forest Service decision-making.

To remedy the Forest Service's violations of FACA and NFMA, IWGA seeks relief: 1) declare that the RADT and Payette Principles Committees were advisory committees subject to the mandates of the FACA and NFMA; and 2) hold unlawful and set aside the RADT and Payette Principles Reports. For the reasons stated more fully below, IWGA asks the Court to enter summary judgment on both of IWGA's claims.

## STATEMENT OF FACTS

1. The Forest Service established a committee—the "RADT Committee"—consisting of non-federal and federal wildlife professionals that convened in New Meadows, Idaho on December 14, 2005. *See* IWGA's Statement of Material Facts Not in Dispute filed contemporaneously with this Memorandum ("Mat. Facts") ¶ 1-2.

2. Information and opinions of individuals on the RADT Committee were combined to form a uniform, grouped RADT Committee risk assessment to evaluate the risk of disease transmission among domestic sheep and bighorn sheep for each of the Payette's twenty-three sheep allotments. *Id.* ¶ 5-6.

3. Based on the RADT Committee meeting and risk assessment, the Forest Service published a written report on February 6, 2006, titled "Risk Analysis of Disease Transmission Between Domestic Sheep and Bighorn Sheep on the Payette National Forest" ("RADT Report")

analyzing the effects of disease transmission from domestic sheep grazed on sheep allotments within the Payette to bighorn sheep populations occurring within and near the Payette. *Id.* ¶ 7-8.

4.     The RADT Report concluded that grazing domestic sheep on certain allotments on the Payette would likely threaten the viability of certain bighorn sheep populations. *Id.* ¶ 9.

5.     The Forest Service established the Payette Principles Committee, consisting of non-federal and federal scientists, that convened in Boise, Idaho on November 2, 2006. *Id.* ¶ 11.

6.     The Payette Principles Committee was presented with specific science-based and procedural concerns raised in comments to the RADT Report and developed a list of uniform, consensus-based statements to address some of the science-based concerns. *Id.* ¶ 18.

7.     The Forest Service released the "Payette Principles Report" on November 27, 2006, that presented six consensus statements addressing concerns of disease transmission between domestic sheep and bighorn sheep and bighorn sheep mortality. *Id.* ¶ 20.

8.     The Payette Principles Committee advised the Forest Service and recommended to it that "it is prudent to undertake management to prevent contact between [domestic sheep and bighorn sheep]." *Id.* ¶ 21.

9.     The advice and recommendations of the RADT and Payette Principles Committees were utilized to develop the RADT Report and Payette Principles Report, respectively. *Id.* ¶ 22.

10.     Further, the Forest Service utilized the statements and recommendations of the RADT and Payette Principles Committees to conclude that management by the Forest Service to prevent contact between domestic and bighorn sheep was warranted. *Id.* ¶ 23.

11.     As a result, the Forest Service decided to prevent domestic sheep grazing on certain sheep allotments on the Payette and Nez Perce National Forest. *Id.* ¶ 24-26.

12.     The Forest Service has also utilized and continues to utilize the RADT and

Payette Principles Reports, and the advice and recommendations from the RADT and Payette

Principles Committees, to amend the Payette LRMP.  *Id.* ¶ 27.

<u>S</u>TANDARD OF <u>R</u>EVIEW

A party moving for summary judgment must demonstrate "that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(c).  "[I]n order to withstand a motion for summary judgment, a party (1) must make a

showing sufficient to establish a genuine issue of fact with respect to any element for which it

bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in

favor of either party; and (3) must come forward with more persuasive evidence than would

otherwise be necessary when the factual context makes the non-moving party's claim

implausible."  *Western Watersheds Project v. Norton*, 2007 WL 2827375, at *1-2 (D. Idaho

2007) (citation omitted).

Although FACA does not contain an express provision permitting a private cause of

action to enforce rights created under the Act, the Supreme Court has assumed the existence of a

private right of action to enforce FACA under the extant doctrinal framework.  *See Pub. Citizen

v. U.S. Dep't of Justice,* 491 U.S. 440 (1989); *see also Manshardt v. Fed. Jud. Qualifications

Committee*, 408 F.3d 1154, 1156-58, n. 3 (9th Cir. 2005) (deciding merits of FACA claim not

brought under Administrative Procedure Act); *Center for Arms Control and Non-Proliferation v.

Lago*, 2006 WL 3328257, at *4 (D.D.C. 2006).  Thus, FACA may be privately enforced, either

by its own terms or through claims based on other statutory authority, such as the Administrative

Procedure Act ("APA"), 5 U.S.C. §§ 701-706.

The APA also provides authority for the Court's review of decisions under FACA and

NFMA.  *See League of Wilderness Defenders-Blue Mountains Biodiversity Project v. U.S.*, 549

F.3d 1211, 1215 (9th Cir. 2008) ("The APA provides authority for the court's review of decisions under NFMA." (citation omitted)); *Western Watersheds Project v. U.S. Forest Serv.*, 2006 WL 292010, *2 (D. Idaho) (same); *Wyoming Sawmills, Inc. v. U.S. Forest Serv.*, 179 F.Supp.2d 1279, 1298 (D. Wyo. 2001) (APA provides authority for the court's review of FACA decisions). The Court may set aside Forest Service actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

<u>A</u><u>RGUMENT</u>

Under federal law, the Forest Service must establish and utilize advisory committees according to the provisions of FACA and NFMA. Because the Forest Service failed to do this, the Court should declare that the RADT and Payette Principles Committees were advisory committees subject to FACA and NFMA, and hold unlawful and set aside the RADT and Payette Principles Reports so as to foreclose their use.

**I. The RADT and Payette Principles Committees were advisory committees subject to FACA.**

Under FACA, the term "advisory committee" means:

> any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof … which is— … established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government, except that such term excludes (i) any committee that is composed wholly of full-time, or permanent part-time, officers or employees or the Federal Government …."

5 U.S.C. App. 2, § 3(2); *see Manshardt*, 408 F.3d at 1157.

"Through the passage of FACA, Congress sought to recognize the importance of having advisory committees to the Executive Branch be completely open to public observation and comment." *Alabama-Tombigbee Rivers Coalition v. Dep't of Interior*, 26 F.3d 1103, 1106 (11th

Cir. 1994).  Congress intended to counter the fear that committees would be dominated by groups seeking to advance their own agendas, and to ensure the public could remain appraised of the existence, activities and cost of advisory committees.  *See Pub. Citizen*, 491 U.S. at 446 (*citing* 5 U.S.C. App. II § 2(b)).  To accomplish Congress' intentions, FACA prohibits the establishment of "advisory committees" by federal agencies without adherence to the prescribed requirements for establishing and managing such committees.  *See* 5 U.S.C. App. 2, § 9.

> **A.** **The RADT and Payette Principles Committees were both "established" by the Forest Service as advisory committees subject to FACA.**

Various courts, including the United States Supreme Court, have applied FACA to mean that an advisory committee is "established" when it has been formed by a government agency. *Pub. Citizen*, 491 U.S. at 457-58; *see also Heartwood, Inc. v. U.S. Forest Serv.*, 431 F.Supp.2d 28 (D.D.C. 2006).  Factors used to determine if a committee was established by an agency include whether the agency conceived of the committee or selected the membership for the committee.  *See Miccosukee Tribe of Indians of Fla. v. U.S.*, 420 F.Supp.2d 1324, 1342 (S.D.Fla. 2006).  Or, whether the committee was funded or managed by the agency.  *See Sw. Center for Biological Diversity v. Klasse*, 1999 WL 34689321, at *12 (E.D.Cal. 1999), *citing Aluminum Co. of Amer. v. National Marine Fisheries Serv.*, 92 F.3d 902, 906 (9th Cir. 1996).

To avoid establishing an advisory committee under FACA, the Forest Service must:

> Make sure there is sufficient separation between the Federal Government and outside groups.  The Federal Government cannot control the group, its organization, or its operations, nor can the Federal Government have someone else establish a group for it.  Federal control would be inferred if the Federal Government funds, selects members, or sets the agenda of the group.  Federal control could also be inferred if the Federal Government indirectly funds, selects members, or sets the agency of a group.

Office of the General Counsel, USDA, *Federal Advisory Committee Act*, Aug. 2000, at 12, available at http://www.fs.fed.us/r6/willamette/manage/opalcreek/reference/faca.pdf (2/24/09).

Here, the RADT Committee was "established" by the Forest Service, an agency within the scope of FACA, for the specific purpose of providing advice and recommendations for the Forest Service on the risk of disease transmission from domestic sheep to bighorn sheep on the Payette. AR 353-55, 407-08; Defendants' Answer ("Answer") ¶ 18, 48. The Forest Service conceived of the committee, selected the membership of the committee and paid the members of the committee to attend the RADT Committee meeting. Mat. Facts ¶ 1. Further, the RADT Committee meeting was hosted and managed by the Forest Service. *Id.*; AR 404-13.

Similarly, the Payette Principles Committee was "established" by the Forest Service for the purpose of clarifying public concerns regarding the RADT Report, and allowing panelists to provide additional information regarding disease transmission and its risk of occurring on the Payette. Mat. Facts ¶ 17-18. The Forest Service conceived of the committee, selected the membership of the committee and paid the members of the committee to attend the Payette Principles Committee meeting. Mat. Facts ¶ 11; AR 3933-34, 3946, 6588-89. Further, the Payette Principles Committee meeting was hosted by the Forest Service. *Id.*

Therefore, according to the case law interpreting the term "established" and the Forest Service's own guidance, the Committees must both be held to have been "established" by the Forest Service as "advisory committees" subject to FACA.

**B.      The RADT and Payette Principles Committees were both "utilized" by the Forest Service as advisory committees under FACA.**

Alternatively, even if the Committees are not deemed "established" by the Forest Service, they were both "utilized" by the Forest Service and thus, were "advisory committees" as defined by FACA. An advisory committee is "utilized" if it is amenable to strict management by agency officials. *Pub. Citizen*, 491 U.S. at 457-58; *see also Aluminum Co. of Amer.*, 92 F.3d at 905. Factors used to determine whether an agency "utilized" a committee include whether the agency

exerted control over or actually managed the committee, or whether the agency is the recipient of information from the committee or the committee was acting as an agent of the agency. *Miccosukee Tribe of Indians*, 420 F.Supp.2d at 1342.

With regard to the RADT Committee, the Forest Service actually managed the committee and was the sole recipient of the information from the committee. Mat. Facts ¶ 1, 3-5; AR 000353, 000404-13. Similarly, the Forest Service actually managed the Payette Principles Committee by determining its membership; determining what the committee would discuss and what information it would consult; directing and facilitating the meeting of the committee; and being the sole recipient of the information from the committee. Mat. Facts ¶ 11, 15-16, 18-19; AR 3933-46, 6588-89. Thus, the Committees must both be held to have been "utilized" by the Forest Service as "advisory committees" subject to FACA.

**C.      The RADT and Payette Principles Committees were established or utilized in the interest of obtaining advice or recommendations for the Forest Service.**

In *California Forestry Ass'n v. U.S. Forest Serv.*, 102 F.3d 609, 610-11 (D.C. Cir. 1996), the Forest Service established a science panel comprised of a mix of individuals from federal agencies, state universities and one private university to conduct a scientific review of old growth forests. The court held that the science panel was established "in the interest of obtaining advice and recommendations" for the Forest Service, and thus subject to FACA, because (1) the science panel's report was intended to serve as an element of the Forest Service's plan for ecosystem management, (2) the science panel viewed the Forest Service as the user of its report, and (3) the Forest Service used the report in developing a draft environmental impact statement. *Id.* at 611-12; *see also Nw. Forest Resource Council v. Espy*, 846 F.Supp. 1009 (D.D.C. 1994) (applying FACA to advisory committee that rendered advice and recommendations on forest

management policy); *Heartwood*, 431 F.Supp.2d at 35 (committee held to be subject to FACA because it was assembled for purpose of informing Forest Service's policy-making).

Similarly, the RADT and Payette Principles Reports were intended to serve as an element of the Payette's forest planning and the Committees viewed the Payette as the intended user of their advice and recommendations. Moreover, the Payette actually used the Reports to modify grazing permits and develop the proposed Payette LRMP. *See* Mat. Facts ¶ 8-9, 17-18, 20-21; AR 402 ("The end-product [of the RADT Committee meeting] is expected to be used as a basis for subsequent environmental analysis involving adding Forest Plan direction, and grazing allotment plan updates."). The Committees were established or utilized "in the interest of obtaining advice or recommendations" for the Forest Service and, thus, subject to FACA.

### D.     The RADT and Payette Principles Committees were not exempt from FACA under the Unfunded Mandates Reform Act.

The Unfunded Mandates Reform Act of 1995 ("UMRA"), 2 U.S.C. § 1534, provides that:

> The Federal Advisory Committee Act (5 U.S.C. App.) shall not apply to actions in support of intergovernmental communications where – (1) meetings are held exclusively between Federal officials and elected officers of State, local, and tribal governments (or their designated employees with authority to act on their behalf) acting in their official capacities; and (2) such meetings are solely for the purposes of exchanging views, information or advice relating to the management or implementation of Federal programs established pursuant to public law that explicitly or inherently share intergovernmental responsibilities or administration.

The guidelines implementing UMRA state "[a]gencies should seek to consult with the highest levels of the pertinent government units, e.g., the Office of the Governor, Mayor, or Tribal Leader (or their designated employees with authority to act on their behalf). These officials are the ones elected to represent the people and are the ones that the public hold directly accountable for the actions of those government units." *See* 60 Fed. Reg. 50651, 50652 (Sept. 29, 1995).

UMRA does not exempt the Committees from FACA because neither committee's meeting was held between "Federal officials and *elected officers* of State, local, and tribal governments" or "their designated employees." 2 U.S.C. § 1534 (emphasis added). The state and tribal attendees of the RADT Committee meeting were not "elected officers" and there is no indication that the state and tribal participants were "designated employees." *See Wyoming Sawmills*, 179 F.Supp.2d at 1305 (indicating that state and tribal attendees must be "designated" and citing to specific letter of designation for such attendees). Because a number of attendees that provided input at the RADT Committee meeting, including those from the Oregon Department of Fish and Wildlife, the Idaho Department of Fish and Game and the Wildlife Director of the Nez Perce Tribe were not "designated employees," the RADT Committee meeting was not exempt from FACA under UMRA. *See* Mat. Facts, ¶ 3, 4.

The Payette Principles Committee meeting was similarly not "held *exclusively* between Federal officials and elected officers of State, local and tribal governments." 2 U.S.C. § 1534 (emphasis added). Instead, the committee included a member from the British Columbia Ministry of Wildlife, which is not part of any State, local or tribal government of the United States. The committee also received input from a private facilitator. *See* Mat. Facts ¶ 12, 13, 15. In addition, the attendees of the meeting were not "designated employees," including the scientists representing the Idaho Departments of Fish and Game and Agriculture; Washington State University; the British Columbia Ministry of the Environment; the California Department of Fish and Game; the Colorado Division of Wildlife; the Nevada Department of Agriculture; and the University of Idaho. *See* Mat. Facts ¶ 12. Thus, the Payette Principles Committee meeting was not exempt from FACA under UMRA.

Furthermore, neither the RADT nor the Payette Principles Committee meetings were "meetings solely for the purpose of exchanging views, information, or advice relating to the management or implementation of Federal programs established pursuant to public law that explicitly or inherently share intergovernmental responsibilities or administration." 2 U.S.C. § 1534. UMRA's purpose was to aid elected officers of State, local and tribal governments to "provide meaningful and timely input into the development of regulations containing significant intergovernmental mandates." H.R. Rep. No. 104-76, at 40 (Mar. 13, 1995); *see also* 60 Fed. Reg. at 50653. The Committees did not involve the development of regulations pursuant to the APA or any significant intergovernmental mandates. No regulations have been proposed. The Payette's decisions on the LRMP only affect forest lands on the Payette and those who operate on those lands, and do not contain any intergovernmental mandates for the states of California, Colorado, Idaho, Oregon, and Nevada, or the Nez Perce Tribe and the Province of British Columbia. Plainly, the exemption from FACA in UMRA does not apply to the Committees' meetings, thus, both committees were subject to FACA.

II.     **The Forest Service violated FACA and NFMA.**

A.      **The Forest Service failed to meet the requirements for advisory committees subject to FACA.**

FACA imposes a number of requirements on advisory committees. *See* 5 U.S.C. App. 2 §§ 2, 9-14. The Forest Service failed to adhere to these requirements. The Forest Service violated FACA because it failed to establish the RADT and Payette Principles Committees following a determination as a matter of formal record, with timely notice published in the Federal Register. *See* 5 U.S.C. App. 2, § 9(a)(2). Further, the Forest Service violated FACA because it did not file an advisory committee charter before convening the Committees and

publishing the Reports. *See id.* § 9(c). In addition, the Forest Service failed to meet the following prescribed requirements for the Committees under FACA, 5 U.S.C. App. 2, § 10:

(1)     Each advisory committee meeting shall be open to the public. *See* Answer ¶ 13, 40-41, 44, 61-63 (indicating Forest Service failure to meet requirement).

(2)     Timely notice of each meeting shall be published in the Federal Register, and the Administrator shall prescribe regulations to provide for other types of public notice to insure that all persons are notified of each meeting prior thereto. *Id.* ¶ 44, 66.

(3)     Interested persons shall be permitted to attend, appear before, or file statements with any advisory committee. *Id.* ¶ 40-41, 44, 61-63.

(4)     The documents which were made available to or prepared for or by each advisory committee shall be available for public inspection and copying at a single location in the offices of the agency to which the advisory committee reports until the advisory committee ceases to exist. IWGA's Complaint ("Complaint") ¶ 42-43, 64-65.

(5)     Detailed minutes of each meeting of each advisory committee shall be kept and shall contain a record of the persons present, a complete and accurate description of the matters discussed and conclusions reached, and copies of all reports received, issued, or approved by the advisory committee. The accuracy of all minutes shall be certified to by the chairman of the advisory committee. Answer ¶ 46, 68.

(6)     There shall be a designated officer or employee of the federal government to chair or attend each meeting of each advisory committee. No advisory committee shall conduct any meeting in the absence of that officer or employee. *Id.* ¶ 47, 69.

(7)     Advisory committees shall not hold any meetings except at the call of, or with the advance approval of, a designated officer or employee of the federal government, and with an agenda approved by such officer or employee. *Id.* ¶ 47, 69.

**B.     The Forest Service failed to require the membership of the RADT and Payette Principles Committees to be fairly balanced in violation of FACA and NFMA.**

FACA provides that agency heads or other federal officials creating an advisory committee shall "require the membership of the advisory committee to be fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee." 5 U.S.C. App. 2, § 5(b)(2), (c). Further, an advisory "committee must … 'not be inappropriately influenced by the appointing authority or by any special interest.'" *In re Cheney*, 406 F.3d 723, 727 (D.C. Cir. 2005) (*quoting* 5 U.S.C. app. II §§ 5(b)(2), (3) and (c)).

The Forest Service violated FACA, 5 U.S.C. App. 2, § 5(b)(2), (c), because it failed to require the membership of the RADT Committee to be fairly balanced in terms of representing IWGA's and Dr. Bulgin's points of view. Answer ¶ 13, 40-41, 44, 61-63; *see* AR 12061 (excluding Dr. Bulgin from Payette Principles Committee); Complaint ¶ 12 (Dr. Bulgin is a well-known and highly-regarded expert on disease transmission and risk of disease among bighorn and domestic sheep.). Not a single member of either of the Committees was a representative of the domestic sheep industry. AR 384, 3946. Further, the Forest Service inappropriately influenced the Committees by hand-picking the members of each committee, by selecting the information that each committee reviewed, and by pre-determining the outcome of the committee meetings by assuming at the outset, without scientific basis, that contact between domestic sheep and bighorns on the Payette's open range would occur and would likely transmit disease to bighorn sheep populations. Mat. Facts ¶ 1, 5, 9, 11, 13, 17-18.

Similar to FACA, NFMA contains a requirement that Forest Service advisory boards be unbiased and fairly balanced. Under NFMA the Secretary of Agriculture, pursuant to FACA and other applicable law, shall "establish and consult such advisory boards as he deems necessary to secure full information and advice on the execution of his responsibilities." 16 U.S.C. § 1612(b). "The membership of such boards shall be representative of a cross section of groups interested in the planning for and management of the National Forest System and the various types of use and enjoyment of the lands thereof." *Id.* The membership of the Committees was not representative of a cross section of groups interested in planning for and management of the Payette. Not a single member of the domestic sheep industry was represented, nor any members of the scientific community representing scientific views similar to those of Dr. Bulgin. AR 384, 3946; *see* Answer ¶ 13, 40-41, 44, 61-63. Thus, the Forest Service also violated NFMA in establishing the RADT and Payette Principles Committees.

## III.    The Forest Service acted arbitrarily, capriciously, and not in accordance with law or the procedure required by FACA and NFMA.

The APA provides a right to judicial review of all "final agency action for which there is no other adequate remedy in a court" unless (1) statutes preclude judicial review or (2) agency action is committed to agency discretion by law. 5 U.S.C. §§ 701(a), 704. The first prong of the APA's reviewability analysis asks whether the statute expressly precludes judicial review. *Id.* § 701(a)(1). This prong is inapplicable here because neither FACA nor NFMA expressly precludes judicial review. The second prong of the APA's reviewability analysis precludes review if "agency action is committed to agency discretion by law." *Id.* § 701(a)(2). This prong is also inapplicable here because the Forest Service had a nondiscretionary duty under FACA, 5 U.S.C. App. 2., §§ 1-16, and NFMA, 16 U.S.C. § 1612, to adhere to FACA and NFMA procedures when establishing and utilizing the Committees.

Further, there must be "final agency action" for a right to judicial review under the APA. 5 U.S.C. § 704. Without "final agency action," a plaintiff does not have prudential standing to bring an APA claim, and the court lacks jurisdiction to consider such a claim. *See Colo. Envtl. Coal.*, 353 F.3d at 1235. In order to be "final agency action," the agency's action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow." *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); *see* 5 U.S.C. § 704 ("A preliminary, procedural, or intermediate agency action or ruling not directly reviewable [by statute] is subject to review on the review of the final agency action.").

Here, the meetings of the Committees were final agency actions because IWGA's legal rights were denied. *See Jud. Watch*, 219 F.Supp.2d at 40. Decisions to hold meetings without public access to the meetings or the records created indeed has a legal consequence—the denial of the public's right of access to that information—and constituted "final agency action." *Id.* ("Subsequent actions taken without granting access, and the failure to grant access itself, constitute final agency action."). IWGA and other interested parties were prevented from enforcing their rights pursuant to FACA to attend the Committees' meetings and to access information made available to or prepared for or by the Committees.

There was also final agency action when the Forest Service applied the advice and recommendations of the Committees, and used the Reports, to make decisions concerning grazing allotments on the Payette. Both of these actions have imposed obligations on regulated non-federal parties and have effected (or will effect) a change in existing law, rules or grazing terms and thus, are "final agency actions." *See Bennett v. Spear*, 520 U.S. at 177-78.

Under the APA, if an action is reviewable, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law; … [or] without observance of procedures required by law." 5 U.S.C. § 706(2)(A), (D). Here, the Forest Service had a nondiscretionary duty under 5 U.S.C. App. 2, §§ 1-16 to (1) require the membership of the Committees to be fairly balanced in terms of the points of view represented and the functions to be performed; (2) to authorize the establishment of the Committees and to file advisory committee charters prior to conducting the committee meetings; and (3) to follow advisory committee procedures, including advance notice of any meetings, holding open meetings, and making records available to the public. Similarly, the Forest Service had a nondiscretionary duty under NFMA, 16 U.S.C. § 1612(b), to (1) comply with FACA when establishing or consulting the Committees in order to secure full information and advice on transmission of disease between bighorn sheep and domestic sheep, and (2) to ensure the membership of the Committees represented a cross section of groups interested in bighorn and domestic sheep disease transmission issues.

By failing to comply with its duties under FACA and NFMA, the Forest Service acted arbitrarily, capriciously, and not in accordance with law or the procedure required by law. The Forest Service's failure to comply with FACA and NFMA violates the APA. Upon violation of the APA, the offending agency action must be set aside. 5 U.S.C. § 706.

IV. **IWGA has timely brought its claims and is now entitled to relief.**

A. **IWGA's claims are timely.**

IWGA brings a private action against the Forest Service under FACA as well as actions under the APA. Where a private civil action is commenced against the United States, the complaint must be filed within six years after the right of action first accrues. *See* 28 U.S.C. § 2401(a). Here, the earliest possible right of action would have accrued on December 14, 2005 when the RADT Committee meeting was held. Thus, IWGA's private action is well within the statute of limitations.

Similarly, under the APA, the six year statute of limitations under 28 U.S.C. § 2401(a) applies, except the right of action does not accrue until there has been final agency action. 5 U.S.C. § 704; *see Wind River Min. Corp. v. U.S.*, 946 F.2d 710, 712-16 (9th Cir. 1991); *Cloud Foundation, Inc. v. Kempthorne*, 546 F.Supp.2d 1003, 1010 (D.Mont. 2008). IWGA's cause of action accrued when the Forest Service held the RADT and Payette Principles Committee meetings, or later, when the Forest Service applied the advice and recommendations of the Committees to make decisions concerning grazing allotments on the Payette in 2007 and 2008. *See* Mat. Facts ¶ 24-26. Thus, IWGA's claims are timely.

**B.    IWGA's claims are not moot.**

It is well settled that the exercise of judicial power authorized by Article III of the United States Constitution depends on the existence of a case or controversy. *See, e.g., Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). A case is moot when it "has lost its character as a present, live controversy of the kind that must exist if [the court] is to avoid advisory opinions on abstract questions of law." *Schering Corp. v. Shalala*, 995 F.2d 1103, 1106 (D.C. Cir. 1993). Article III is satisfied when, as here, the existence of a "partial remedy" is "sufficient to prevent [a] case from being moot." *Calderon v. Moore*, 518 U.S. 149, 150 (1996).

Here, because at least two forms of relief are available, this case is not moot. *See Jud. Watch*, 219 F.Supp.2d at 28 (*citing Cummock v. Gore*, 180 F.3d 282 (D.C. Cir. 1999)); *Byrd v. EPA*, 174 F.3d 239 (D.C. Cir. 1999)). This Court may issue a declaration that the Committees were advisory committees established and utilized in violation of FACA and NFMA, and hold unlawful and set aside the Reports. Neither of these claims for relief are mooted by the fact that the Committees no longer exist. *See Jud. Watch*, 219 F.Supp.2d at 30-32 (claims for declaratory relief pursuant to FACA not mooted by termination of advisory committee) (citations omitted). The requested relief to set aside the Reports upon a finding of an APA violation is required by

the APA itself.  5 U.S.C. § 706.  Further, because the Forest Service continues to apply the advice and recommendations of the Committees, and use their reports, as it develops the Payette LRMP, IWGA's claims are not moot.  *See* Mat. Facts ¶ 27.

> **C.    IWGA is entitled to the requested relief.**

"Congress intends the executive to obey its statutory commands, and, accordingly, … it expects the courts to grant relief when an executive agency violates such a command."  *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 681 (1986).  The APA generally provides a remedy for any such violation.  *See* 5 U.S.C. § 701, *et seq.* (outlining requirements).  "[T]he Court has noted that the APA … embodies a 'basic presumption of judicial review.'"  *Newman v. Apfel*, 223 F.3d 937, 943 (9th Cir. 2000) (*quoting Lincoln v. Vigil*, 508 U.S. 182, 190 (1993)).  The APA specifically provides that a "reviewing court *shall … hold unlawful and set aside* agency action, findings, and conclusions found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706 (emphasis added).  Because the Forest Service's establishment and utilization of the Committees, including its preparation and use of the Reports, was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with FACA and NFMA, this Court should hold unlawful and set aside the Reports.

In addition, this Court is free to exercise its discretion to draft equitable relief addressing statutory violations.  Indeed, if this Court determines that a statutory violation has occurred, "the Court *must* provide some sort of relief."  *See Jud. Watch*, 219 F.Supp.2d at 30 (emphasis added by court) (*citing, e.g., U.S. v. Oakland Cannabis Buyers' Cooperative*, 532 U.S. 483 (2001)).

This court has held that injunctive relief may not be appropriate for a violation of FACA in certain cases.  *See Idaho Farm Bureau Federation v. Babbitt*, 900 F.Supp. 1349 (D. Idaho 1995) (hereinafter "*IFBF*").  The reasoning and decision in *IFBF*, however, is inapposite here,

and does not determine the relief requested by and available to IWGA. The decision in *IFBF* was based on a factual inquiry in a case where the plaintiffs were seeking injunctive relief "well after" a final regulation had been published listing a species under the Endangered Species Act. *Id.* at 1366. Magistrate Judge Boyle distinguished IFBF's late request for an injunction from the more modest relief of "simply foreclosing the use of the report." *Id.* Here, IWGA is not seeking injunctive relief and is not seeking to overturn a final regulation. IWGA seeks to foreclose the use of the reports.

Further, unlike in *IFBF*, where the plaintiffs were allowed to participate in panel meetings and public hearings and submit written comments, *id.* at 1366, IWGA was not afforded the opportunity to attend either the RADT or Payette Principles Committee meetings, no public hearings on the subject of disease transmission were held prior to the committee meetings, and IWGA was only allowed to submit comments on the RADT Report. Thus, IWGA has not been "afford[ed] [the same] ample opportunity to correct infirmities," as the plaintiffs in *IFBF* were held to have been afforded. *Id.* (citations omitted). IWGA has been, and is continuing to be, diligent to correct the infirmities of the Committees and their reports. Mat. Facts ¶ 10, 24-26. The court's decision in *IFBF* was circumstantial, *IFBF* at 1367, and does not determine the outcome of this case.

The fact that IWGA had the opportunity to comment on the RADT Report is inconsequential. IWGA's comments went unanswered and the major flaws pointed out in the RADT Report were not addressed by the Payette Principles Committee or the Payette Principles Report. *See* Mat. Facts ¶ 19 (unaddressed procedural concerns). Further, because comments were not requested on the Payette Principles Report, IWGA had no opportunity to point out the major flaws in that report, some of which persisted from the RADT Report. AR 6531-32 (notice

of conclusion of risk assessment process without request for comments).  Even so, "[b]ecause FACA's dictates emphasize the importance of openness and debate, the timing of such observation and comment is crucial to compliance with the statute.  *Public observation and comment must be contemporaneous to the advisory committee process itself.*"  *Alabama-Tombigbee Rivers*, 26 F.3d at 1106 (emphasis added), *citing  Pub. Citizen v. National Economic Comm'n.,* 703 F.Supp. 113, 129 (D.D.C.1989).  If public commentary is limited to retrospective scrutiny, FACA is rendered meaningless.  *See Alabama-Tombigbee Rivers*, 26 F.3d at 1106.

Here, the Forest Service did not follow FACA and NFMA requirements during the advisory committee process and the record clearly supports that conclusion.  As a result, this Court must grant relief to IWGA.  "[T]o allow the government to use the product of a tainted procedure would circumvent the very policy that serves as the foundation of [FACA]."  *Id.* at 1107.  IWGA asks this Court to declare that the RADT and Payette Principles Committees were advisory committees subject to the mandates of FACA and NFMA, and to hold unlawful and set aside the RADT and Payette Principles Reports.  This requested relief provides the only vehicle that carries the sufficient remedial effect to ensure future compliance with FACA's clear requirements.  "Anything less would be tantamount to nothing."  *Id.*

**CONCLUSION**

For the foregoing reasons, IWGA requests that this Court grant its motion for summary judgment.

Respectfully submitted this 25th day of February, 2009.

HOLLAND & HART LLP

By: /s/William G. Myers III
       William G. Myers III, for the firm
       Attorneys for Plaintiffs Idaho Wool Growers
       Association and Dr. Marie Bulgin

**CERTIFICATE OF SERVICE**

I certify that on February 25, 2009, I electronically filed the foregoing with the Clerk of the U.S. District Court of Idaho using the CM/ECF system which sent a Notice of Electronic filing to the following persons:

Deborah A. Ferguson
U.S. Attorney's Office
800 Park Boulevard, Suite 600
Boise, ID 83712-9903
Deborah.Ferguson@usdoj.gov

/s/William G. Myers III
HOLLAND & HART LLP
Attorneys for Plaintiff Idaho Wool Growers
Association and Dr. Marie Bulgin

4433345_7.DOC