William G. Myers III (ISB #5598)
Holland & Hart LLP
101 S. Capitol Boulevard, Suite 1400
Boise, Idaho 83702-2527
Telephone: (208) 342-5000
Facsimile: (208) 343-8869
Email: wmyers@hollandhart.com

ATTORNEY FOR PLAINTIFFS,
IDAHO WOOL GROWERS ASSOCIATION
AND DR. MARIE S. BULGIN

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO WOOL GROWERS ASSOCIATION, and DR. MARIE S. BULGIN, <br><br> Plaintiffs, <br><br> v. <br><br> TOM VILSACK*, in his official capacity as the Secretary of the United States Department of Agriculture, GAIL KIMBELL, in her official capacity as the Chief of the United States Forest Service, SUZANNE C. RAINVILLE, in her official capacity as the Forest Supervisor of the Payette National Forest, and UNITED STATES FOREST SERVICE <br><br> Defendants. <br><br> *Substituted as official defendant per F.R.C.P. 25(d) | Case No. 08-cv-00394 <br><br> **IWGA'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (Doc. No. 23)** |

## INTRODUCTION

The defendants (collectively "Forest Service") violated the Federal Advisory Committee Act ("FACA"), 5 U.S.C. App. 2 §§ 1 *et seq.*, and the National Forest Management Act ("NFMA"), 16 U.S.C. § 1612(b). These violations denied the IWGA and Dr. Bulgin (collectively "IWGA") participation in the Forest Service's deliberations and decisions. These violations biased the reports issued by the Forest Service's committees. The Forest Service has used and continues to use the biased reports in its policy and management of the National Forest lands.

The Forest Service admits that it "did not follow the formal process for establishing advisory committees" required by FACA. "Resp. to Pls.' Mot. for Summ. J." (Doc. No. 26) ("Response"). Response at 16-17. The Forest Service offers no response to IWGA's NFMA claims. Nor does the Forest Service dispute IWGA's statement of material facts.[1] Instead, the Forest Service argues that it is exempt from FACA, Response at 10-14, and that it should not be held accountable for violating FACA and NFMA, Response at 14-17. The Forest Service then attempts to recast this case as a scientific dispute. Response at 17-19.

The Forest Service misunderstands the nature of this case and the extent of relief sought by IWGA. According to the Forest Service, "[t]he ultimate question in this lawsuit is whether the actions undertaken by the Forest Service to separate domestic and bighorn sheep were reasonable in light of the totality of the information available to the Forest Service." Response at 19. To the contrary, the question is whether the Forest Service violated FACA's and NFMA's procedural requirements.

---

[1] The Forest Service did not submit a statement of facts in dispute as required by Dist. Idaho Loc. Civ. R. 7.1(c)(2). Therefore, the Forest Service is deemed to have acquiesced to IWGA's Statement of Material Facts Not in Dispute. (Doc. No. 23-3.) *See* Local Rule 7.1(e).

Violations of FACA's and NFMA's procedures are reviewable under FACA and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. *See* IWGA Mem. in Supp. of Mot. for Summ. J. (Doc. No. 23-2) at 4-5; *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967) (The Supreme Court has recognized a strong presumption that Congress intends judicial review of administrative action.); *see also* Response at 6, 14 (Forest Service does not directly contest IWGA's enforcement of FACA). Under the APA, where the Forest Service has violated FACA and NFMA, this Court should (1) hold unlawful such agency action (the RADT and Payette Principles Committees) and (2) set aside findings and conclusions resulting from the unlawful agency action (the RADT and Payette Principles Reports). 5 U.S.C. § 706(2).

## ARGUMENT

**I. FACA applied to the RADT and Payette Principles Committees**

The Forest Service chiefly argues that FACA exempts the RADT and Payette Principles Committees according to an exception found in the Unfunded Mandates Reform Act ("UMRA"), 2 U.S.C. § 1534(b). Response at 10. However, this Court cannot review the Forest Service's invocation of the UMRA exemption when deciding whether the Forest Service complied with FACA. The UMRA, 2 U.S.C. § 1571(b), provides in relevant part:

> (1) … any compliance or noncompliance with the provisions of this Act, and any determination concerning the applicability of the provisions of this Act shall not be subject to judicial review;

The Conference Report accompanying the UMRA emphasized that the portion of UMRA containing the FACA exemption is "completely exempt from judicial review." H.R. Conf. Rep. 104-76, 1995 U.S.C.C.A.N. 64, *45. The Court should disregard the Forest Service's attempt to gain judicial review of its alleged compliance with the FACA exemption.

Alternatively, if this Court reviews the Forest Service's compliance with 2 U.S.C. § 1534(b), it should find that the UMRA does not exempt the RADT and Payette Principles

Committees from FACA. Only meetings "held exclusively between Federal officials and elected officers of State, local, and tribal governments (or their designated employees with authority to act on their behalf)" are covered under UMRA exemption. 2 U.S.C. § 1534(b)(1). Neither the RADT Committee nor the Payette Principles Committees met these requirements.

UMRA does not exempt the Payette Principles Committee from FACA. The committee included an employee from the British Columbia Ministry of Agriculture and Susan Hayman, a private facilitator. *See* Mat. Facts ¶ 12, 13, 15. The Forest Service argues in a footnote that British Columbia should be considered a State, local, or tribal government. The argument fails. Canadian provincial governments are not within the definitions of these terms.[2] Response at 12, n.1. The Payette Principles Committee thus failed UMRA's exclusivity requirement.

No elected State, local, or tribal officials were on either committee. The Forest Service is left to argue that any State employee should be considered "designated employees with authority" to act on behalf of elected State officers. Response at 10-14. However, the Forest Service cites nothing in the Administrative Record indicating that the state-employed committee members were designated or authorized by governors or other elected officials to act on their behalf in the committee meetings.

---

[2] A "State" is "a State of the United States, the District of Columbia, a territory or possession of the United States, and an agency, instrumentality, or fiscal agent of a State but does not mean a local government of a State." 31 U.S.C. § 6501(9); *see* S. Rep. 104-1, 1995 U.S.C.C.A.N. 4, *38 (*citing* 31 U.S.C. § 6501(9) for definition of "State" in the UMRA); *see also* H.R. Conf. Rep. 104-76, *6 (same). A "local government" is "a unit of general local government, a school district, or other special district under State law." 31 U.S.C. § 6501(6); *see* S. Rep. 104-1, *38 (*citing* 31 U.S.C. § 6501(6) for definition of "local government" in the UMRA); *see also* H.R. Conf. Rep. 104-76, *6 (same). "Tribal government" means "any Indian tribe, band, nation, or other organized group or community, including any Alaska Native village or regional or village corporation…." S. Rep. 104-1, *38 (*citing* 31 U.S.C. § 6501(6) for definition of "local government" in the UMRA); *see also* H.R. Conf. Rep. 104-76, *6 (same).

OMB's UMRA guidelines state that "agencies should seek to consult with the highest levels of pertinent government units, e.g., the Office of the Governor, Mayor or Tribal Leader … These officials are the ones elected to represent the people and are the ones that the public holds directly accountable for the actions of those government units." *See* 60 Fed. Reg. 50651, 50652 (Sept. 29, 1995); *see also* H.R. Conf. Rep. 104-76, *40 (emphasizing that FACA exception only applies to "elected officers" "acting in their official capacities" "or their designated representatives"). Again, the Administrative Record is devoid of the Forest Service's actual or attempted consultation with the governors. The Forest Service should have consulted with the governors; those governors could have authorized and designated employees to act on their behalf. *Wyoming Sawmills, Inc. v. U.S. Forest Serv.*, 179 F.Supp.2d 1279, 1305 & fn. 25 (D.Wyo. 2001) (discussing formal designation by Tribal leaders).

As a U.S. Senator, Dirk Kempthorne was UMRA's chief sponsor. *See* Decl. of Dirk Kempthorne, Exh. A, at ¶ 8. He was also Governor of Idaho when the RADT Committee met and produced the its Report. *Id.* at ¶ 5. He does not recall designating or authorizing any State of Idaho employee to act on his behalf on the RADT Committee. *Id.* at ¶ 9. Jim Risch was Governor of Idaho when the Payette Principles Committee met and produced its report. *See* Decl. of James E. Risch, Exh. B, at ¶ 2(d). He did not designate or authorize any State of Idaho employee to act on his behalf on the Payette Principles Committee. *Id.* at ¶ 5.

## II. IWGA and Dr. Bulgin have standing to bring this action.

### A. IWGA has been injured.

The APA provides that "[a] person suffering legal wrong because of agency action … is entitled to judicial review thereof." 5 U.S.C. § 701. To establish standing under the APA, a plaintiff must show that it has "suffered legal wrong" or is "adversely affected or aggrieved by

agency action within the meaning of [the] relevant statute." 5 U.S.C. § 702; *see Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 883 (1990).

Here, IWGA "suffered legal wrong" because it was denied its rights pursuant to FACA and NFMA to attend, observe and comment during the RADT and Payette Principles Committee meetings and to access information made available to or prepared for or by the committees. *See Idaho Farm Bureau Fed'n ("IFBF") v. Babbitt*, 900 F.Supp. 1349, 1364 (D.Idaho 1995) ("FACA clearly accords Plaintiffs the procedural rights they claim were denied them"); *Cummock v. Gore*, 180 F.3d 282, 292 (D.C. Cir. 1999) (discussing enforceable right to information under FACA); *Jud. Watch Inc. v. Nat'l Energy Policy Dev. Group*, 219 F.Supp.2d 20, 40 (D.D.C. 2002) ("FACA obligates the government to make open and available to the public the meetings and records of advisory committees"). Further, IWGA's and Dr. Bulgin's right to have their expertise and perspective represented on the RADT and Payette Principles Committees were denied. *See* FACA, 5 U.S.C. App. 2, § 5(b)(2), (c) (providing right to "fairly balanced" committee); NFMA, 16 U.S.C. § 1612(b) (same); *IFBF*, 900 F.Supp. at 1364 ("Clearly, Plaintiffs' asserted injury, i.e. that the FACA violations resulted in a biased recommendation from the committee, falls within the 'zone of interests' protected by the FACA."). As the Supreme Court held in *Public Citizen v. Dep't of Justice*, 491 U.S. 440 (1989), an agency's "refusal to permit [a party] to scrutinize [an advisory committee's] activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue." 491 U.S. at 449; *see also* 491 U.S. at 440, 441, 448-451 (finding standing under FACA).

In addition to procedural injuries, members of IWGA, including Frank Shirts, Jr., Shirts Bros. Sheep, and Carlson Livestock Company, have been injured by the Forest Service's reliance on the RADT and Payette Principles Reports to modify grazing permits. Other members of

IWGA, including Soulen Livestock Company face the threat of imminent and concrete harm as the Forest Service continues to rely on the RADT and Payette Principles Reports to modify grazing on the Payette National Forest. This harm is hardly "speculative," as the Forest Service has already suspended grazing on the Forest, based in part on the RADT and Payette Principles Reports. *See* IWGA's Statement of Material Fact Not in Dispute ("Mat. Facts"), ¶ 27.

Unlike in *Summers v. Earth Island Institute*, 129 S.Ct. 1142, 1151-52 (2009), cited by the Forest Service, Response at 8-9, where the plaintiffs did not show that application of the regulations at issue would affect them, here, the Forest Service's failure to follow FACA and NFMA *has affected* IWGA. IWGA has already suffered legal wrong because its rights were denied. In addition, members of IWGA have already been injured by the Forest Service's use of the RADT and Payette Principles Reports to modify grazing permits, and still, more members of IWGA, such as Soulen Livestock Company, face the threat of imminent and concrete harm as the Forest Service continues to rely on the RADT and Payette Principles Reports.

**B.     The legally deficient Committee meetings constituted final agency action.**

For standing under the APA, a plaintiff must also show that there has been some "final agency action." 5 U.S.C. § 704; *Lujan*, 497 U.S. at 882. The agency's action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). An agency action that does not "impose an obligation, deny a right, or fix some legal relationship" is not judicially reviewable due to lack of finality. Response at 7; *see Fairbanks N. Star Borough v. U.S. Army Corps of Engineers*, 543 F.3d 586, 591, 593, 597 (9th Cir. 2008) (citation omitted).

The procedurally deficient meetings of the committees denied IWGA's legal rights and thus were final agency actions. *See Jud. Watch*, 219 F.Supp.2d at 40. The Forest Service's failure to grant access to the meetings, its denial of the public's right of access to information

made available to or prepared for or by the committees, and its failure to require the committees to be "fairly balanced," all constituted final agency action. *See id.*; *Fairbanks N. Star Borough*, 543 F.3d at 591, 597 (agency action denying a right is final agency action under APA).

The Forest Service attempts to foreclose judicial scrutiny of its admitted violations by first arguing that IWGA must wait for it to issue the Payette Revised Land and Resource Management Plan ("LRMP") to have final agency action, Response at 7, and then by arguing that when the Forest Service issues the Payette Revised LRMP it will be too late for this Court to grant relief to IWGA. *See* Response at 14-16. On the contrary, this Court has both the ability to presently review the Forest Service's violations of FACA and NFMA, and to grant IWGA relief.

### III. IWGA's action is not barred by res judicata or collateral estoppel.

The Forest Service argues that IWGA's action is barred by the doctrine of res judicata and collateral estoppel because of litigation brought to this Court by the Shirts Bros., Case No. 07-cv-151. Response at 9-10. "Res judicata, or claim preclusion, provides that a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *United States v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008); *see also* Response at 9. "The related doctrine of collateral estoppel, or issue preclusion, provides that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *United States v. Bhatia*, 545 F.3d at 759 (citations and quotations omitted); Response at 9-10.

IWGA's suit is not barred by either res judicata or collateral estoppel because (1) it involves different claims and issues than the Shirts Bros. suit, including claims and issues under both FACA and NFMA, (2) the Court did not have NFMA claims before it and "[t]he Court did

not reach the merits of [the Shirts Bros.] FACA claims,"[3] and (3) this suit involves different parties than the Shirts Bros. suit, including IWGA and Dr. Bulgin. Furthermore, this Court has already denied the Forest Service's motion to consolidate IWGA's action with *W. Watersheds Project et al.*, 07-cv-151-S-BLW, Mem. Decision and Order (Doc. No. 128) at 4, 5.

**IV.     IWGA is entitled to the relief sought.**

The APA provides that a reviewing court shall "*hold unlawful* and *set aside* agency action, findings, and conclusion*s* found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; … [or] without observance of procedures required by law."  5 U.S.C. § 706(2)(A), (D) (emphasis added).  Thus, if the Court holds that the Forest Service failed to comply with FACA and NFMA, it must "hold unlawful" the establishment and use of the RADT and Payette Principles Committees.  Further, the Court must "set aside" the RADT and Payette Principles Reports from those committees.

   **A.     IWGA is entitled to a declaratory judgment.**

Every case cited by the Forest Service to argue that IWGA is not entitled to the relief it is seeking provided for declaratory judgment when the agency in question violated FACA.[4]  Response at 14-16.  The Forest Service does not dispute that declaratory judgment relief is proper here.  *See id.*  Because the Forest Service admits non-compliance with FACA and ignores

---

[3] *See* Mem. Decision and Order, *W. Watersheds Project et al. v. U.S. Forest Serv.*, 07-cv-151-S-BLW (Doc. No. 128) at 4 (Jan. 8, 2009).

[4] *See Alabama-Tombigbee*, 26 F.3d at 1105 fn. 5 (providing declaratory judgment); *Nat'l Nutritional Foods Ass'n v. Califano*, 603 F.2d 327, 336 (2nd Cir. 1979) (same); *Cal Forestry Assoc. v. Forest Service*, 102 F.3d 609, 613 (D.C. Cir. 1996) (same); *IFBF*, 900 F.Supp. 1349, 1360 (same); *Nw. Forest Council v. Espy*, 846 F.Supp. 1009, 1015 (D.D.C. 1994) (same); *Heartwood, Inc. v. U.S. Forest Service*, 431 F.Supp.2d 28, 28 (D.D.C. 2006) (same); *Seattle Audubon Society v. Lyons*, 871 F.Supp. 1291, 1309 (W.D.Wash. 1994).

NFMA, and was not exempt from the requirements of these statutes, this Court should declare the RADT and Payette Principles Committees unlawful.

        **B.    IWGA is entitled to have the RADT and Payette Principles Reports set aside.**

Curiously, the only relief that the Forest Service disputes is the "set aside" of its grazing permit decisions, Response at 14, which is relief that IWGA does not seek. IWGA asks this Court to set aside the findings and conclusions from the committees, the RADT and Payette Principles Reports. *See Alabama-Tombigbee*, 26 F.3d at 1107 (specifically providing for such relief under FACA). Several courts have been reluctant to set aside final agency decisions, rather than simply setting aside biased committee reports, but IWGA does not ask this court to invalidate a final agency decision. *See National Nutritional Foods Ass'n*, 603 F.2d 327 (attempting to invalidate final regulation); *Seattle Audubon Soc.*, 871 F.Supp. 1291 (same).

In *IFBF*, a case decided by this Court, the plaintiffs "were seeking to set aside an entire agency action," Response at 15, which in that case was a final regulation by the Fish and Wildlife Service listing mollusks under the Endangered Species Act. In his opinion, Magistrate Judge Boyle explained that the plaintiffs' delay in voicing their objections to the FACA violations at issue until after the final regulation was issued prevented them from obtaining relief. *IFBF*, 900 F.Supp. at 1366. Magistrate Boyle further provided that waiting to seek "invalidation of the final rule listing the mollusks, *rather than simply foreclosing use of the report*" prepared by the advisory committee at issue in the case was fatal to plaintiffs' case. *Id.* (emphasis added). If plaintiffs had not waited until after a final decision had been made, they may have obtained relief setting aside the advisory committee report. *See id.*

Unlike the situation in *IFBF*, here, IWGA has not delayed in voicing its objections to the Forest Service's FACA and NFMA violations. The final decision on the Payette Revised LRMP has not been issued and IWGA is not seeking to invalidate it or specific grazing decisions.

Consistent with Magistrate Judge Boyle's analysis in *IFBF*, IWGA seeks to foreclose use of the RADT and Payette Principles Reports prepared in violation of FACA and NFMA. "When the government violates FACA, the question is … what options are available to this Court to remedy that statutory violation." *Jud. Watch*, 219 F.Supp.2d at 32.

Such relief would best promote the purposes of FACA and NFMA. *See Alabama-Tombigbee*, 26 F.3d at 1107 (holding that set aside of report was necessary to promote FACA's purposes); *see also Cal. Forestry Assoc.*, 102 F.3d at 614 (holding that set aside of advisory committee report may be appropriate to promote FACA's purposes and avoid rendering FACA a nullity). Congress sought to make certain that advisory committees be open to public observation and comment in order to prevent inappropriate influence by the appointing authority and to ensure balanced, unbiased advice from committees. *See Alabama-Tombigbee*, 26 F.3d at 1106; *Pub. Citizen*, 491 U.S. at 446; *In re Cheney*, 406 F.3d 723, 727 (D.C. Cir. 2005). Because the Forest Service did not adhere to the FACA and NFMA procedures designed to accomplish these purposes, the RADT and Payette Principles Committees lacked public observation and comment, and were inappropriately influenced by the unbalanced group of attendees. Those parties with the most at stake, here represented by IWGA and Dr. Bulgin, were barred from participating in the RADT and Payette Principles Committee meetings and were denied their rights under FACA and NFMA. Predictably, the RADT and Payette Principles Reports produced by the committees were unbalanced and biased. The Forest Service does not point to any of FACA's or NFMA's purposes that would be served by allowing it to continue to rely on the flawed RADT and Payette Principles Reports. These reports should be set aside.

Respectfully submitted this 7th day of April, 2009.

                    HOLLAND & HART LLP


                    By: /s/William G. Myers III
                    William G. Myers III, for the firm
                    Attorneys for Plaintiffs Idaho Wool Growers
                    Association and Dr. Marie Bulgin


## CERTIFICATE OF SERVICE

I certify that on April 7, 2009, I electronically filed the foregoing with the Clerk of the U.S. District Court of Idaho using the CM/ECF system which sent a Notice of Electronic filing to the following persons:

    Deborah A. Ferguson
    U.S. Attorney's Office
    800 Park Boulevard, Suite 600
    Boise, ID  83712-9903
    Deborah.Ferguson@usdoj.gov


                    /s/William G. Myers III
                    HOLLAND & HART LLP
                    Attorneys for Plaintiff Idaho Wool Growers
                    Association and Dr. Marie Bulgin

4487456_1.DOC