IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IDAHO WOOL GROWERS ASSOC., | ) | |
| AND DR. MARIE S. BULGIN, | ) | Case No. CV-08-394-S-BLW |
| | ) | |
| Plaintiffs, | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER RE: IWGA'S** |
| v. | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| ED SCHAFER, in his official capacity as | ) | |
| the Secretary of the United States | ) | (Docket No. 23) |
| Department of Agriculture, GAIL | ) | |
| KIMBELL, in her official capacity as the | ) | |
| Chief of the United States Forest Service, | ) | |
| SUZANNE C. RAINVILLE, in her official | ) | |
| capacity as the Forest Supervisor of the | ) | |
| Payette National Forest, and UNITED | ) | |
| STATES FOREST SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it Plaintiff Idaho Wool Growers Association's Motion for Summary Judgment (Docket No. 23).  The Court heard oral argument on June 18, 2009.  For the reasons expressed below, the Court will grant the Motion.

# BACKGROUND

The Forest Service established two committees - the "RADT Committee" and the "Payette Principles Committee" (collectively "Committees")[1] - to study the risk of disease transmission from domestic sheep to bighorn sheep.  Plaintiffs Idaho Wool Growers Association ("IWGA") and Dr. Marie S. Bulgin allege that the Committees (in both their formation and operation) violated the Federal Advisory Committee Act ("FACA") and the National Forest Management Act ("NFMA").  In particular, Plaintiffs claim that they were barred from participating in the Committees, resulting in a lack of representation by anyone engaged in domestic sheep management or behavior.

Through this action, Plaintiffs seek (1) a declaration that the Committees were "advisory committees" subject to the procedural mandates of FACA and NFMA, and (2) an order setting aside the Committees' findings and conclusions and precluding the Forest Service's future reliance on the reports generated therefrom.  Importantly, Plaintiffs are not attempting to challenge prior grazing permit decisions or, likewise, any earlier decision relating to the Land and Resource Management Plan.

---

[1]  The Forest Service identifies the two committees as the "Expert Panel" and the "Science Panel," respectively.

**Memorandum Decision and Order - Page 2**

# ANALYSIS

Under federal law, the Forest Service must establish and utilize advisory committees according to FACA's and NFMA's provisions. These provisions attempt to ensure that advisory committees to federal agencies are transparent and adequately represent the public interest by imposing a number of requirements on advisory groups regarding such matters as advance notice of committee meetings, the keeping of public availability of minutes, and the composition of advisory group membership. *See* 5 U.S.C. App. II, §§ 2, 9-14.

The Forest Services does not dispute these objectives. Still, in opposing IWGA's Motion, the Forest Services raises five arguments: (1) Plaintiffs' claims do not relate to a "final agency action" as is required under the Administrative Procedure Act ("APA");[2] (2) Plaintiffs lack standing under the APA; (3) Plaintiffs' claims are procedurally barred consistent with the principles of res judicata and collateral estoppel; (4) the Committees are exempt from FACA/NFMA in any event; and (5) there is no basis for awarding the relief Plaintiffs' seek, even when assuming FACA's/NFMA's application. *See* Resp. to Pls.' Mot. for Summ. J., pp. 6-16 (Docket No. 26). Based upon the record supplied to the Court, each of these

---

[2]  The Forest Service concedes that claims for alleged FACA violations are to be brought under the APA. *See* Resp. to Pls.' Mot. for Summ. J., pp. 6-7 (Docket No. 26); *see also* IWGA's Mem. in Supp. of Mot. for Summ. J., p. 5 (Docket No. 23, Att. 1) (citing cases applying APA to review of decisions under both FACA and NFMA).

**Memorandum Decision and Order - Page 3**

arguments is without merit.

## I.      Plaintiffs' Claims Relate to a "Final Agency Action"

To obtain judicial review under the APA, Plaintiffs must challenge a final

agency action.  *See* 5 U.S.C. § 704.  As the Supreme Court has noted, the word

"action" in this context is meant "to cover comprehensively every manner in which

an agency may exercise its power," and is not particularly problematic.  *See*

*Whitman v. American Trucking Assoc.*, 531 U.S. 457, 478 (2001).  It is the word

"final" that carries more significance.  To be "final," an agency action must "mark

the consummation of the agency's decisionmaking process," and must either

determine "rights or obligations" or occasion "legal consequences."  *Bennett v.*

*Spear*, 520 U.S. 154, 177-78 (1997).

Here, the Forest Service appears to acknowledge that the challenged conduct

represents agency action, arguing, instead, that such conduct is not sufficiently

"final" to warrant judicial review.  Specifically, the Forest Service claims that the

Committees' formation and corresponding reports are preliminary in nature and

cannot possibly affect Plaintiffs' rights or obligations in a way that imposes any

legal consequences upon Plaintiffs.  *See* Resp. to Pls.' Mot. for Summ. J., p. 7

(Docket No. 26).  These arguments fail.

First, the claim that the Committees' reports represent an initial step toward

determining whether and how to amend the Forest Plan (*see id*.) misses the point. The discrete issue here is unrelated to a forthcoming final environmental impact statement and any later, "final decision," as the Forest Service suggests.  *See id*. ("The Forest Service has issued a draft environmental impact statement for public comment, and will be issuing a final environmental impact statement before making any final decisions.").  Rather, Plaintiffs' claims appropriately focus on whether the Forest Service's conduct attendant to the Committees' creation and operation complied with both FACA and NFMA.  It is in this latter respect that Plaintiffs' claims are premised – not any *future* Forest Service determination.[3]

Second, the Committees' allegedly procedurally-deficient meetings necessarily affected Plaintiffs' legal rights – again, independent of any discretion the Forest Service may have had in accepting or rejecting the Committees' final work-product.  That is, the alleged decision to hold meetings without public access

---

[3]  Moreover, as a practical matter, case law exists, allowing litigants the ability to bring a claim under the APA challenging advisory committee conduct under FACA and/or NFMA - exactly what Plaintiffs are doing here.  Indeed, both Plaintiffs and the Forest Service cite cases allowing a plaintiff to challenge the makeup and/or product of an advisory committee; implicitly acknowledging that the sponsoring entity's conduct with respect to the at-issue advisory committee represents a final agency action.  *See e.g.*, *Idaho Farm Bureau Fed. v. Babbitt*, 900 F. Supp. 1349 (D. Idaho 1995); *Alabama-Tombigbee Rivers Coalition v. Dep't of the Interior*, 26 F.3d 1103 (11th Cir. 1994); *see also, e.g.*, *Colorado Envtl. Coal. v. Wenker*, 353 F.3d 1221 (10th Cir. 2004); *Judicial Watch, Inc. v. National Energy Policy Dev. Group*, 219 F. Supp. 2d 20 (D.D.C. 2002).  With all this in mind, a court could view a procedural violation, under FACA, as ready for review at the time that violation is committed.

**Memorandum Decision and Order - Page 5**

to those meetings or to the records created as part of those meetings would have denied Plaintiffs' right of access to that information pursuant to FACA protocols. Thus, the Forest Service's reliance on *Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586 (9th Cir. 2008) is distinguishable from the situation here; the challenged agency action cannot realistically be described as "advisory" when any subsequent Forest Service decision does not speak uniquely to the formation of or proceedings conducted by the Committees.  *See Judicial Watch*, 219 F. Supp. 2d at 40 (meetings in violation of FACA "had a legal consequence").

FACA obligates the government to make open and available to the public the meetings and records of advisory committees generally.  *See supra* at pp. 2-3. The Forest Service's alleged failure to do so here is what Plaintiffs allege, nothing more.  These circumstances constitute a challenge to a final Forest Service action.

## II.     Plaintiffs Have Standing Under the APA

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof. *See* 5 U.S.C. § 702; *see also Lujan v. National Wildlife Fed.*, 497 U.S. 871 (1990) ("[T]o be 'adversely affected or aggrieved' . . ., the plaintiff must establish that the injury he complains of (*his* aggrievement, or the adverse effect *upon him*) falls within the 'zone of interests' sought to be protected by the statutory provision

whose violation forms the legal basis for his complaint" (quoting *Clarke v. Securities Indus. Assn.*, 479 U.S. 388, 396-97 (1987) (emphasis in original)). Organizations like the IWGA can assert the standing of their members as well, so long as the particularized injury that standing requires is established.  *See* Resp. to Pls.' Mot. for Summ. J., p. 8 (Docket No. 26) (citing *Summers v. Earth Island Inst.*, 129 S.Ct. 1142, 1149 (2009)).

The Forest Service argues that "Plaintiffs' sole basis for standing is the injury to [Frank Shirts, Jr., Shirts Bros. Sheep, and Carlson Livestock Company], who are pursuing the identical lawsuit in the Shirts' litigation."  *See* Resp. to Pls.' Mot. for Summ. J., p. 8 (Docket No. 26).  The Forest Services misunderstands the distinct relief Plaintiffs seek in *this* action and, in doing so, misdirects its argument regarding standing.

Based upon the record (and confirmed during oral argument), Plaintiffs are not seeking injunctive relief; are not seeking to overturn a final regulation; and are not seeking to set aside any previous grazing decision.  *See* IWGA's Mem. in Supp. of Mot. for Summ. J., p. 19 (Docket No. 23, Att. 1).  Plaintiffs' claims relate to the Forest Service's alleged failure to follow the procedural requirements outlined within FACA and NFMA when forming and operating the Committees. *See* Compl., ¶¶ 77-88 (Docket No. 1).  Arguing they were denied their rights to

attend, observe and comment, and to access information made available to and/or prepared by/for the Committees (*see* IWGA's Reply in Supp. of Mot. for Summ. J., p. 5 (Docket No. 32)), Plaintiffs seek only to prevent the use of the Committees' reports going forward.  According to the IWGA, it is this denial of rights that represents the predicate injury to confer standing.  The Court agrees.

In *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the Supreme Court recognized that a person accorded a procedural right to protect his interests can assert that right or, put another way, has standing.  *See id*. at 572, n. 7 (relaxing normal requirements of redressability and immediacy when dealing with alleged violations of procedural rights).  Applying this standard, this Court, in *Idaho Farm Bureau*, 900 F. Supp. 1349, not only determined that "FACA clearly accords Plaintiffs the procedural rights they claim were denied to them,"[4] but, equally important, that "Plaintiffs' asserted injury, i.e. that the FACA violations resulted in a biased recommendation from the committee, [clearly] falls within the 'zone of interests' protected by the FACA."  *See id*. at 1364; *see also Public Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989) (in comparing plaintiff's claim to denied requests under the Freedom of Information Action, "refusal to permit [a

---

[4]  The procedural rights in *Idaho Farm Bureau*, 900 F. Supp. 1349, similarly spoke to advisory committee requirements, alleging the U.S. Fish and Wildlife Service failed to "(1) prepare and file a charter; (2) chair the meeting; (3) publish notice of the meeting; and (4) prepare and maintain minutes of the meeting."  *See id*. at 1364.  Additionally, this Court applied these procedural rights to the plaintiffs' individual members.  *See id*.

**Memorandum Decision and Order - Page 8**

party] to scrutinize [an advisory committee's] activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue.").

The Forest Service claims that "only a 'person who has been accorded a procedural right to protect his concrete interests can assert that right'" (*see* Resp. to Pls.' Mot. for Summ. J., pp. 8-9 (Docket No. 26) (citing *Summers*, 129 S. Ct. at 1151)), later implying that the IWGA and its members have not suffered "imminent and concrete harm." *See id*. at p. 8. This argument, however, ignores the fact that the Forest Service's alleged failure to follow FACA and NFMA has already denied IWGA and its members their procedural rights to participate in the Committees. These denied rights constitute the requisite injury to confer standing here.

## III.   Plaintiffs' Claims are Not Barred by Res Judicata or Collateral Estoppel Principles

"Res judicata . . . 'provides that a 'final judgment on the merits bars further claims by parties or their privies based on the same cause of action[;]" "[t]he related doctrine of collateral estoppel . . . provides that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *See U.S. v. Bhatia*, 545 F. 3d 757, 759 (9th Cir. 2008) (internal citations omitted).

The Forest Service claims that Plaintiffs should not be allowed to proceed,

**Memorandum Decision and Order - Page 9**

arguing that this Court has already "ruled on precisely the same issues in the Shirts' litigation, brought by the same parties upon whom Plaintiffs in this case rely for standing." *See* Resp. to Pls.' Mot. for Summ. J., p. 10 (Docket No. 26). IWGA naturally disagrees, countering that the "Shirts' litigation" (1) involved different claims, (2) was not decided on the merits, and (3) involves different parties. *See* IWGA's Reply in Supp. of Mot. for Summ. J., p. 8 (Docket No. 32). The Court agrees with IWGA.

In *Shirts Brothers Sheep v. United States*, Case No. 07-241-E-BLW & 07-151-E-BLW, the plaintiffs requested immediate injunctive relief prohibiting the Forest Service from authorizing domestic sheep grazing on identified allotments and trailing routes during 2007. *See* 07-151-BLW Compl., ¶ A (Docket No. 1). Although the legal vehicle for setting aside the Forest Service's decision to modify grazing permits was FACA, this Court denied the plaintiffs' motion for partial summary judgment,[5] reasoning that the plaintiffs waited too long to bring their claim. *See* 07-151 Mem. Decision and Order, pp. 2-3 (Docket No. 123).

As a result, even if this Court reached the merits in *Shirts Bros.* (which it did not), it would have considered an entirely different claim for relief than the one

---

[5]   On December 15, 2008, the plaintiffs moved this Court to reconsider its Memorandum Decision and Order denying the plaintiffs' motion for partial summary judgment. *See* 07-151-BLW Mot. to Reconsid. (Docket No. 126).  That motion remains outstanding.

**Memorandum Decision and Order - Page 10**

presented here.  There, the plaintiffs sought to modify the Forest Service's grazing

permits; in contrast, here, Plaintiffs seek to preclude any future reliance on the

reports generated by the Committees - independent of the Forest Service's prior

grazing permit decisions.  These important differences render res judicata and/or

collateral estoppel principles inapplicable.[6]

## IV.    Based Upon the Record, the Committees are Not Exempt From FACA/NFMA

An exception to FACA's transparency requirements is provided under the

Uniform Mandates Reform Act of 1995 ("UMRA"), which states:

> The Federal Advisory Committee Act . . . shall not apply to actions in support of intergovernmental communications where –
>
> (1)    meetings are held exclusively between Federal officials and elected officers of State, local, and tribal governments (or their designated employees with authority to act on their behalf) acting in their official capacities; and
>
> (2)    such meetings are solely for the purposes of exchanging views, information, or advice relating to the management or implementation of Federal programs established pursuant to public law that explicitly or inherently share intergovernmental responsibilities or administration.

*See* 2 U.S.C. § 1534(b).

---

[6]  Further, when previously given the opportunity to consolidate this action with *Shirts' Bros*. (*Shirts' Bros.* was consolidated with *Western Watersheds Project et al., v. U.S. Forest Service*, CV-07-151-S-BLW), this Court refused to do so.  *See* 1/8/09 Mem. Decision and Order (Docket No. 18).

**Memorandum Decision and Order - Page 11**

Here, the Forest Service argues that both conditions are met, therefore removing the Committees from FACA's procedural requirements and, ultimately, foreclosing Plaintiffs' claims. *See* Resp. to Pls.' Mot. for Summ. J., pp. 10-14 (Docket No. 26). IWGA disagrees, arguing that neither condition is met, thus warranting FACA's application to the Committees. *See* IWGA's Memo. in Supp. of Mot. for Summ. J., pp. 10-12 (Docket No. 23, Att. 1).[7]

IWGA correctly argues that UMRA does not exempt the Committees from FACA "because neither committee's meeting was held between 'Federal officials and *elected officers* of State, local, and tribal governments' or 'their designated employees.'" *See id.* at p. 10 (citing 2 U.S.C. § 1534) (emphasis in original). It is true that Federal officials were no doubt in attendance during the Committees'

---

[7] Whether the Committees engaged in meetings "solely for the purposes of exchanging views, information, or advice relating to the management or implementation of Federal programs established pursuant to public law that explicitly or inherently share intergovernmental responsibilities or administration" (the second criterion for invoking UMRA's exception) cannot be decided as a matter of law here. The Forest Service emphatically states: "[t]he management of rangeland activities, such as domestic sheep grazing, and the effects of those activities on wildlife, such as bighorn sheep, relate to the 'implementation of Federal programs established pursuant to public law.'" *See* Resp. to Pls.' Mot. for Summ. J., p. 11 (Docket No. 26). In contrast, IWGA contends that the Committees "did not involve the development of regulations pursuant to the APA or any significant intergovernmental mandates" as UMRA's legislative history suggests is necessary. *See* IWGA's Memo. in Supp. of Mot. for Summ. J., p. 11 (Docket No. 23, Att. 1). The Court need not resolve this discrepancy in order to address the question of whether an exception to FACA/NFMA exists under UMRA.

**Memorandum Decision and Order - Page 12**

meetings; however, less clear is whether the *state* officials also in attendance[8] were

"elected" officers themselves (or designated employees authorized to act on their

behalf) as is required under UMRA.  The Forest Service's conclusory statements

that such individuals "ha[ve] authority to act on behalf of elected state officials"

(*see* Resp. to Pls.' Mot. for Summ. J., p. 11 (Docket No. 11)) not only lacks legal

authority,[9] but is belied by the Declarations of Dirk Kempthorne and James E.

Risch, Idaho's elected governors during the RADT Committee and the Payette

Principles Committee, respectively.  Governors Kempthorne and Risch

unequivocally state that they "have no recollection of designating or authorizing

any State of Idaho employee to act on [their] behalf either as a member [of the

Committees] or in the production of [subsequent reports].  *See* Kempthorne Decl.,

¶ 9 (Docket No. 32, Att. 2); *see also* Risch Decl., ¶ 5 (Docket No. 32, Att. 3).  The

---

[8]  As to the RADT Committee, it is undisputed that non-federal wildlife professionals from the Oregon Department of Fish and Wildlife and the Idaho Department of Fish and Game, in addition to the Wildlife Director of the Nez Perce Tribe, were in attendance.  *See* IWGA's Stmt. of Mat. Facts Not in Dispute, ¶¶ 2-4 (Docket No. 23, Att. 3).  As to the Payette Principles Committee, it is undisputed that non-federal scientists from the Idaho Department of Fish and Game and Agriculture, Washington State University, the British Columbia Ministry of the Environment, the California Department of Fish and Game, the Colorado Division of Wildlife, the Nevada Department of Agriculture, and the University of Idaho were in attendance.  *See id.* at ¶ 12.

[9]  The Forest Service's position that "[t]he state employees at the University of Idaho have authority to act on behalf of elected officials of the state in the conduct of research and dissemination of scientific information" (*see* Resp. to Pls.' Mot. for Summ. J., p. 13 (Docket No. 26)) is likewise without legal support.

**Memorandum Decision and Order - Page 13**

record does not suggest otherwise.  Without more, it cannot be said that the state officials in attendance during the Committees' meetings were either elected officials themselves, or designated to act on elected officials' behalf.

Separately, even when adopting the Forest Service's argument, the inclusion of the British Columbia Ministry of the Environment in the Payette Principles Committee conflicts with UMRA's requirement that meetings be held "exclusively" between Federal and elected state officials for the exclusion to FACA/NFMA to apply.  *See* 2 U.S.C. § 1534(b) (FACA shall not apply where "meetings are held *exclusively* between Federal officials and elected officers of State, local, and tribal governments . . . ." (emphasis added)).[10]  Therefore, in addition to the reasons outlined above, the Payette Principles Committee, given its list of participants, would not seem to be exempted from FACA/NFMA under UMRA's exception.

These factors combine to reveal that the Committees - both the RADT

---

[10]  The Forest Service's retort in this respect - that Canadian provincial governments are analogous to the State, local, and tribal governments listed in UMRA (*see* Resp. to Pls.' Mot. for Summ. J., p. 12, n. 1 (Docket No. 26)) - is, again, not supported by legal authority.  While the Court understands that a strict interpretation of FACA may very well do more harm than good when fostering the exchange of information between intergovernmental agencies, it cannot ignore what appears to be a clear limiting requirement for applying the UMRA exception.  Furthermore, erring on the side of *more* transparency through public access to advisory committee procedure, does not strike this Court as an obvious restriction on "the ability of the Executive to obtain information" (*see id.*) as the Forest Service argues.

Committee and the Payette Principles Committee - are not exempt from

FACA's/NFMA's procedural mandates.  This particular determination, however,

does not translate to a finding that the Forest Service violated FACA/NFMA in

coordinating and overseeing the Committees' progress.  *But see infra* at pp. 20-21.

## V.    If FACA was Violated, Plaintiffs are Entitled to the Relief Sought

The Forest Service misunderstands the scope of Plaintiffs' case and, with it,

the relief sought.  According to the Forest Service:

> Presumably, Plaintiffs assert that the Forest Service grazing decisions
> are arbitrary, capricious, or otherwise not in accordance with law
> because the Forest Service relied on information contained in the Risk
> Analysis and Science Panel review, and contend the decision should
> be set aside or enjoined under the APA.

*See* Resp. to Pls.' Mot. for Summ. J., p. 14 (Docket No. 26).[11]  Later, the Forest

Service frames the "ultimate question in this lawsuit" as "whether the actions

undertaken by the Forest Service to separate domestic and bighorn sheep were

reasonable in light of the totality of information available to the Forest Service."

*See id.* at p. 19.  To the contrary, the issue here is whether the Forest Service's

Committees violated FACA's and NFMA's procedural requirements and, if so,

whether the Committees' reports should be utilized for any *future* Forest Service

---

[11]  This is nearly identical to the Forest Service's recitation of the scope of relief sought
in the *Shirts' Bros.* action.  *See* 07-151-BLW Resp. To Pl. Shirts' Mot. for Partial Summ. J., p.
11 (Docket No. 117).

**Memorandum Decision and Order - Page 15**

Decisions.  *See* IWGA's Reply in Supp. of Mot. for Summ. J., p. 2 (Docket No.

32).  The relief sought has nothing to do with setting aside prior grazing permit

decisions.

Now, with the benefit of refocusing the true issue, the Forest Service's own

discussion of *Alabama-Tombigbee Rivers Coalition*, 26 F.3d 1003, actually

endorses Plaintiffs' position rather than rejects it, when the Forest Service states:

> In *Alabama-Tombigbee*, the Eleventh Circuit *upheld an injunction prohibiting the agency from completing or relying on a report produced by an advisory committee in violation of FACA.  Alabama-Tombigbee* was filed before[12] the unlawful advisory committee published its report.  Moreover, *the injunctive relief was not directed at a final agency action that had relied on the advisory committee report, but the report itself.  Plaintiffs here are seeking far more than the preclusion of the use of information that they claim was generated in violation of FACA.*

*See* Resp. to Pls.' Mot. for Summ. J., p. 14 (Docket No. 26) (emphasis added).

Similarly, the Forest Service's reference to *Idaho Farm Bureau*, 900 F.

Supp. 1349, arguably cuts against its opposition to Plaintiffs' claims for relief.  *See*

*id*. at p. 15.  While the Forest Service correctly points out that, in *Idaho Farm*

*Bureau*, this Court found that the U.S. Fish and Wildlife Service's decision to list

mollusks under the Endangered Species Act should not be invalidated due to

---

[12]  To the extent the Forest Service is making a temporal argument based upon when the Committees' reports were generated, that argument is rejected in that it would suggest that, so long as a violating advisory committee hurries with its report, a claim to set aside the use of that report is untimely.

**Memorandum Decision and Order - Page 16**

alleged FACA violations (*see id.*), U.S. Magistrate Judge Larry M. Boyle reasoned that the plaintiffs' delay in seeking "invalidation of the final rule listing the mollusks, *rather than simply foreclosing use of the report*" prepared by the advisory committee at issue there was fatal to the plaintiffs' case.  *See Idaho Farm Bureau*, 900 F. Supp. At 1366 (emphasis added).  In other words, Plaintiffs here are attempting to do just what U.S. Magistrate Judge Boyle suggested is the appropriate procedure for testing advisory committee reports that violate FACA.[13]

IWGA agrees with the Forest Service that "[s]everal courts have been reluctant to set aside final agency decisions, but adds, again, that IWGA does not ask this Court to invalidate a final agency decision.  *See* IWGA Reply in Supp. of Mot. for Summ. J., p. 9 (Docket No. 32) ("Curiously, the only relief that the Forest Service disputes is the 'set aside' of its grazing permit decisions . . . which is relief that IWGA does not seek.  IWGA asks this Court to set aside the findings and conclusions from the committees, the RADT and Payette Principles Reports.").  This important distinction renders the Forest Service's arguments against the relief sought not only inapplicable, but, at times, contrary to its own position.  If, in fact,

---

[13]   The Forest Service's confusion over the actual relief sought here, as comparted to the relief sought in *Idaho Farm Bureau*, is highlighted when it states: "In *Idaho Farm Bureau* [ ], *as in this case*, plaintiffs *were seeking to set aside an entire agency action* on the basis that information compiled by an advisory committee in violation of FACA had been utilized at some point in the decision process.  *See* Resp. to Pls.' Mot. for Summ. J., p. 15 (Docket No. 26) (emphasis added).

**Memorandum Decision and Order - Page 17**

FACA was violated, Plaintiffs are entitled to the relief sought.

## VI.   FACA Applies to the Committees

FACA defines an "advisory committee" as "any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof . . . which is . . . established or utilized by one or more agencies in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government . . . ." *See* 5 U.S.C. App. II, § 3(2).

### A.   The RADT Committee and the Payette Principles Committee Were Established and/or Utilized by the Forest Service

The Supreme Court has given a narrow interpretation to the words "established" and "utilized."  An advisory committee is established when it has been formed by a government agency, and utilized if it is "amenable to . . . strict management by agency officials."  *See Heartwood, Inc. v. U.S. Forest Service*, 431 F. Supp. 2d 28, 34 (D.D.C. 2006) (quoting *Public Citizen*, 491 U.S. at 457-58).

IWGA argues that the Committees were both established and utilized by the Forest Service.  *See* IWGA Mem. in Supp. of Mot. for Summ. J., pp. 6-9 (Docket No. 23, Att. 1).  Based upon the record, the Forest Service does not appear to disagree.  The RADT Committee was convened and managed by the Forest Service "to provide decision makers with information about the likelihood of disease

**Memorandum Decision and Order - Page 18**

transmission from domestic sheep to bighorn sheep for specific sheep allotments on the Payette [National Forest]." *See* Defs.' Answer, ¶¶ 36 & 48 (Docket No. 10). Likewise, the Payette Principles Committee was convened and managed by the Forest Service to "clarify the science-based information regarding disease transmission and its risk of occurring on the Payette National Forest that the Forest Supervisor should consider in conjunction with the RADT analysis." *See id.* at ¶¶ 55 & 70.

Based upon the record, therefore, the RADT Committee and the Payette Principles Committee were established and/or utilized for the Forest Service.

B.    The RADT Committee and the Payette Principles Committee Were Established/Utilized to Obtain Advice or Recommendations

Although not addressed in its briefing, the Forest Service contended during oral argument that the Committees served only as a clearinghouse of information relative to the issue surrounding disease transmission from domestic to bighorn sheep populations.  Any resulting distinction is immaterial when considering FACA's application.  *See, e.g.*, *Heartwood*, 431 F. Supp. 2d at 34-35 ("When a committee is established to provide expert summaries or interpretation of technical data, their reports can be 'in the interest of obtaining advice or recommendations for . . . one or more agencies.'" . . . .  "Even though [the committee] provided the USFS with only narrative summaries of scientific information, *and made no policy*

**Memorandum Decision and Order - Page 19**

*recommendations*, the [committee] drafts and the final assessment provide the framework, context and information that the USFS will rely on in making policy decisions." (emphasis added)).

Therefore, without finding here that the Committees did not formally provide advice or recommendations to the Forest Service (*see supra* at p. 19), it appears undisputed that the Committees' contributions (however they may be described) supplied the Forest Service with information used to make subsequent policy decisions. This, coupled with the reality that the Committees were established/utilized by the Forest Services identifies the Committees as advisory committees under FACA and, therefore, subject to FACA's requirements.

## VII.   The Forest Service did not Follow FACA's Framework

As mentioned earlier (*see supra* at pp. 2-3), FACA imposes a number of requirements on advisory committees.  *See, e.g.*, 5 U.S.C. App. II, §§ 2, 5, 9-14 (records must be made available for public inspection; charter must be filed; upcoming meetings must be announced; meetings must be held in a public place; minutes must be kept; attendance must "be fairly balanced in terms of the points of view represented" and may "not be inappropriately influenced by the appointing authority or by any special interest").  Typically, a close examination of each requirement, contrasted against the circumstances in a particular case, is warranted when determining whether a FACA violation occurred.

**Memorandum Decision and Order - Page 20**

Here, however, the Forest Service acknowledges a FACA violation, stating in no uncertain terms: "The Forest Service *did not follow the formal process for establishing advisory committees* that would have been required if FACA applied to the Expert Panel and the Science Panel. *See* Resp. to Pls.' Mot. for Summ. J., pp. 16-17 (Docket No. 26) (emphasis added). Having already determined that FACA applies to the Committees (*see supra* at pp. 18-20), and consistent with the Forest Service's candid assessment of its conduct regarding the Committees' formation and operation, the Court accordingly finds that the Forest Service did not follow FACA's framework.[14]

## VIII.  The Committees' Reports are Not to be Used in any Future Agency Decision

It cannot be overemphasized that Plaintiffs here are not attempting to undo any agency decision via this action. Instead, Plaintiffs seek to prevent the use of the Committees' reports in any future agency decision.[15]  The Court considers the

---

[14]  The Forest Service simultaneously points out that the Committees were nonetheless "subjected to intense public comment and scrutiny." *See* Resp. to Pls.' Mot. for Summ. J., p. 17 (Docket No. 26).  While this may be true, any informal vetting of administrative processes cannot operate as a substitute for the actual requirements imposed by Congress in such settings.

[15]  In stating Plaintiffs' position as "assert[ing] that if any snippet of information relied upon by the Forest Service is suspect, then its decisions must be set aside in its entirety," the Forest Service overstates the relief sought.  Had Plaintiffs sought to set aside prior grazing permit determinations, this Court's analysis likely would have more closely resembled its previous rulings in *Shirts Bros*. (*see supra* at pp. 9-11).

relief sought appropriate when considering the purpose of FACA.

Congress passed FACA in part to ensure that the public could remain apprised of the existence, activities, and cost of advisory committees.  *See Public Citizen*, 491 U.S. at 446.  Enacted in 1972, one goal of the Act was to prevent wasteful expenditure of public funds while countering the fear that advisory committees would be dominated by representatives of industry and other special interest groups seeking to advance their own agendas.  *See id*. at 453; *see also Cummock v. Gore*, 180 F.3d 282, 284 (D.C. Cir. 1999).

Because Plaintiffs were denied their right to participate in the Committees' processes, FACA's purposes are advanced by limiting the future use of the Committees' reports.  The Court's findings in this limited respect should not be simultaneously interpreted as an endorsement of Plaintiffs' position on disease transmission between domestic and bighorn sheep.  Instead, the Court's findings apply to recognize the continued need for a transparent decision-making process on these (and other) important issues, which are advanced only through FACA's/NFMA's consistent, across-the-board enforcement.

The Court is also comforted by the Forest Service's position that other information is available to the Forest Service to support their prior decisions and, presumably, any future decisions, including any final environmental impact

statement currently in the works.  *See* Resp. to Pls.' Mot. for Summ. J., pp. 17-19 (Docket No. 26).  If, indeed, the Committees represented only a mechanism to collect and summarize all available data relevant to the issue at hand, that same, underlying information would exist to support future agency decisions as well.

Finally, the Court sees the benefit in ensuring that all reasons supporting any agency decision are not only in accordance with the laws speaking to the generation of those reasons, but also are based upon the best, most complete evidence available.  Being overly-cautious on the front-end of such an analysis necessarily leads to better decision making which, in turn, buttresses any future defense of the decisions ultimately made.  For this separate "ounce of prevention" rationale - efficiency - the Court will grant the limited relief Plaintiffs' seek.

## ORDER

For the foregoing reasons, it is HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment (Docket No. 23) is GRANTED insofar as the RADT Committee and the Payette Principles Committee are advisory committees subject to the procedural mandates of FACA and NFMA.  Moreover, the Committees' findings and/or conclusions are not to be relied upon by the Forest Service with respect to any future agency decisions.  Any agency decisions reached in reliance

upon the Committees' reports prior to the date of this Order are expressly not affected by this Order.



DATED:  **July 1, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order - Page 24**