## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO WOOL GROWERS ASSOC., and DR. MARIE S. BULGIN,<br><br>      Plaintiffs,<br><br>      vs.<br><br>ED SCHAFER, in his official capacity as the Secretary of the United States Department of Agriculture, GAIL KIMBELL, in her official capacity as the chief of the United States Fores Service, SUZANNE C. RAINVILLE, in her official capacity as the Fores Supervisor of the Payette National Forest, and UNITED STATES FOREST SERVICE,<br><br>      Defendants. | Case No.:  CV 08-394-S-BLW<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION TO CLARIFY COURT'S ORDER**<br><br>**(Docket No. 39)** |

### INTRODUCTION

The Court has before it Defendants' Motion to Clarify Court's Order (Docket No. 39).  Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

**MEMORANDUM DECISION AND ORDER - 1**

# BACKGROUND

On July 1, 2009, this Court granted Plaintiffs' Motion for Summary Judgment (Docket No. 23), finding (1) that the RADT Committee and the Payette Principles Committee (collectively the "Committees") are advisory committees subject to the procedural mandates of the Federal Advisory Committee Act ("FACA") and the National Forest Management Act ("NFMA"), and (2) that the Committees' findings and/or conclusions are not to be relied upon by the Forest Service with respect to any future agency decisions. *See* 7/1/09 Mem. Decision and Order, p. 23 (Docket No. 37).

Through their Motion to Clarify (Docket No. 39), Defendants seek the Court's clarification on three issues.

First, Defendants point out that, while the Committees' particular findings and/or conclusions can be extracted from the upcoming Final Supplemental Environmental Impact Statement ("Final SEIS"), they are nonetheless referenced and relied upon in the Draft Supplemental Environmental Impact Statement ("Draft SEIS") as the basis for public comment.  Defendants therefore seek guidance on the Forest Service's ongoing environmental analysis for the proposed amendment to the forest plan; specifically, whether the Final SEIS and Record of Decision ("ROD") can refer and incorporate the existing Draft SEIS or, instead, "whether a

**MEMORANDUM DECISION AND ORDER - 2**

new Draft SEIS will have to be written and circulated for public comments." *See* Mot. to Clarify, pp. 1-2, 4-7 (Docket No. 39); *see also* Reply to Mot. to Clarify, p. 2 (Docket No. 45) ("The Forest Service seeks clarification as to whether the EIS analysis process must begin with a new Draft EIS . . . .").

Second, since the Payette Principles were established, many scientific articles have apparently relied upon them. As a consequence, Defendants request that the Court clarify "the ability of the Forest Service to rely upon these new scientific materials which have relied upon or referenced the Payette Principles. *See* Mot. to Clarify. pp. 2, 3-4 (Docket No. 39); *see also* Reply to Mot. to Clarify, p. 2 (Docket No. 45) ("The Forest Service seeks clarification as to . . . whether scientific research that references the excluded studies need also to be excluded.").

Third, in its July 1, 2009 Memorandum, the Court determined that the Unfunded Mandates Reform Act of 1995 ("UMRA") did not exempt the Committees from either FACA's or NFMA's mandated procedural protocols. *See* 7/1/09 Mem. Decision and Order, pp. 11-15 (Docket No. 37). In particular, the Court held that "it cannot be said that the state officials in attendance during the committees' meetings were either elected officials themselves, or designated to act on elected officials' behalf" (*see id*. at p. 14); had they been so designated, an exception to FACA's transparency requirements may have applied. As a result,

**MEMORANDUM DECISION AND ORDER - 3**

Defendants are now "unsure what they must do to fulfill the intergovernmental communications exception" . . . ., asking the Court to clarify its "interpretation of 'designated employee with authority to act'" within the UMRA.  *See* Mot. to Clarify, pp. 2, 7-11 (Docket No. 39).[1]

## DISCUSSION[2]

### A.    The Effect of the Draft SEIS on any Final SEIS

A "final" environmental impact statement logically follows and responds to a "draft" environmental impact statement and its corresponding public comment

----

[1]  Defendants have since withdrawn its third argument.  *See* Reply to Mot. to Clarify, p. 2 (Docket No. 45) ("The Forest Service will abandon its third issue concerning whether UMRA requires written authorization for 'designated employee with authority to act' under section 204(b)(1), as this could be construed as a request for an advisory opinion.").

[2]  Plaintiffs contend that Defendants' Motion to Clarify "may be construed as a Fed. R. Civ. P. 59(e) motion to alter or amend a judgment" (*see* Reply in Supp. Of Pls.' Mot. for Entry of J., p. 1 (Docket No. 41)) and, from there, raising several, related arguments: (1) a motion to alter must be filed *after* the entry of the judgment in the case; (2) there is no intervening change in controlling law; (3) there is no new evidence or expanded factual record justifying a motion to alter/amend; and (4) there is no need to correct a clear error or to prevent manifest injustice.  *See id*; *see also* Pls.' Resp. To Mot. to Clarify Court's Order pp. 3-16 (Docket No. 42).  The Court views Defendants' efforts differently.  It is clear that the Court's Memorandum Decision, ordering that the Committees' findings not be relied upon in future Forest Service determinations, may not be without some question in its practical application.  Indeed, in attempting to *follow* (not necessarily to alter or amend) the Court's Memorandum Decision and Order, Defendants point to certain circumstances that may potentially collide with the overall thrust of the Court's ruling.  It is in this light that the Court considers Defendants' Motion to Clarify as a legitimate attempt to resolve any ambiguity in actually implementing the Court's directives – the ostensible purpose in any attempt to clarify a court's order.

**MEMORANDUM DECISION AND ORDER - 4**

period.  Here, the Court's July 1, 2009 Memorandum Decision and Order

interrupted this progression of events as it was entered *after* the Draft SEIS and

public comment period, but *before* the Final SEIS.  Because (1) any forthcoming

Final SEIS and ROD would typically respond to and be based upon the Draft SEIS,

and (2) the Draft SEIS and subsequent public comments understandably spoke to

the Committees' findings and conclusions, Defendants now question whether a

new Draft SEIS is needed in light of the Court's prohibition against relying on the

Committees' recommendations in any future Forest Service decisions.  *See* Reply

to Mot. to Clarify, p. 3 (Docket No. 45) ("The forthcoming Record of Decision

could be interpreted as relying on the RADT Committee's findings and

conclusions and the Payette Principles, because it will be based on the Draft SEIS

and public comment period that relied extensively on the RADT Committee's work

and the Payette Principles which predated the Court's order.").

   The Court's July 1, 2009 Memorandum Decision and Order was never

intended to unwind prior Forest Service decisions.  Additionally, the Court in no

way intended to subvert the progress already made toward addressing the risk of

disease transmission from domestic sheep to bighorn sheep; to the contrary, the

Court strived to consider Plaintiffs' Motion for Summary Judgment prior to any

Final SEIS and ROD so that the Forest Service could address and account for any

**MEMORANDUM DECISION AND ORDER - 5**

procedural violations within FACA and/or NFMA before any ultimate decision on disease transmission between domestic and bighorn sheep is rendered.

With this backdrop in mind, there is no question that the Final SEIS and ROD must necessarily speak to the preceding Draft SEIS; to state, instead, that the Draft SEIS is forever "off-limits" given its incorporation of the Committees' findings and conclusions would seem to expand the relief originally sought by Plaintiffs – *i.e.*, to set aside the Committees' findings.  The Court has already granted Plaintiffs' requested relief, ordering that the Committees' findings be set aside and not relied upon by the Forest Service in any future agency decisions.  *See* 7/1/09 MDO, p. 23 (Docket No. 39).  Therefore, the forthcoming Final SEIS and ROD may generally address and speak to the Draft SEIS.

However, the Court's recognition of the inevitable interplay between the Draft SEIS and the anticipated Final SEIS and ROD should not be interpreted as an invitation to "grandfather" the Committees findings to support any decision via the Final SEIS and ROD.  Simply put, and consistent with the Court's existing directive, the Forest Service may not rely upon the Committees' findings and/or conclusions in reaching future agency decisions –  either directly or indirectly, through an end-run around the Court's mandate by relying upon those portions of the Draft SEIS that relied solely, or even primarily, upon the violating Committee

**MEMORANDUM DECISION AND ORDER - 6**

reports.  Otherwise, the Court's Order is rendered meaningless.

Again, this position has no effect on the Forest Service's use of the underlying science that may exist to support the Committees' recommendations. *But see supra* at pp. 8-11.  In fact, it was the apparent availability of such information that originally contributed to the Court's granting of Plaintiffs' Motion for Summary Judgment here:

> The Court is also comforted by the Forest Service's position that other information is available to the Forest Service to support their prior decisions and, presumably, any future decisions, including any final environmental impact statement currently in the works.  If, indeed, the Committees represented only a mechanism to collect and summarize all available data relevant to the issue at hand, that same, underlying information would exist to support future agency decisions as well.

*See* 7/1/09 MDO, pp. 22-23 (Docket No. 37).

This is unquestionably a fine line; one the Court is not equipped to resolve once-and-for-all as it is not the agency tasked with authoring the Final SEIS and ROD.  Rather, it is for the Forest Service itself to determine.  If, on the one hand, the Final SEIS and ROD *cannot* be drafted without relying upon those portions of the Draft SEIS that relied solely, or primarily, upon the Committees' findings and/or conclusions, it would appear that the Draft SEIS loses its effect, based on

**MEMORANDUM DECISION AND ORDER - 7**

the FACA/NFMA violations.[3]  On the other hand, if, in responding to the Draft

SEIS and public comments, the Final SEIS and ROD *can* be drafted independent of

the Committees' recommendations (either directly or indirectly (*see infra* at pp. 6-

7)), it would likewise appear that the Draft SEIS need not be drafted anew.  Again,

the Forest Service is in the best position to analyze this issue.

**B.**    **Subsequent Scientific Materials Referencing Excluded Studies**

Defendants allege that, since 2006, the "Payette Principles" compiled by the

Payette Principles Panel "have become a benchmark in the scientific community

for studying reduction of the potential for disease transmission between domestic

---

[3]  The Court agrees with Defendants that, if a new Draft SEIS is necessary, "a significant delay to the revision to the Forest Plan, and the Forest Service's effort to develop a management plan on the Payette National Forest to protect wild bighorn sheep" would likely result.  *See* Mot. to Clarify, p. 5 (Docket No. 39).  However, the Court cannot ignore procedural violations for efficiency's-sake alone.  When addressing the very important issue of disease transmission among sheep in Idaho, there is value (both in the short and long term) in a transparent process done correctly as has already been relayed by the Court:

> Finally, the Court sees the benefit in ensuring that all reasons supporting any agency decision are not only in accordance with the laws speaking to the generation of those reasons, but also are based upon the best, most complete evidence available.  Being overly-cautious on the front-end of such an analysis necessarily leads to better decision making which, in turn, buttresses any future defense of the decisions ultimately made.

*See* 1/7/09 MDO, p. 23 (Docket No. 37).  Whether a new Draft SEIS is actually needed, however, is beyond the scope of this Memorandum Decision and Order.

**MEMORANDUM DECISION AND ORDER - 8**

sheep and bighorn sheep." *See* Mot. to Clarify, p. 3 (Docket No. 39); *see also* Reply to Mot. to Clarify, p. 4 (Docket No. 45). As a consequence, Defendants further allege that "[m]any, if not all, documents completed after issuance of the Payette Principles by the Forest Service and other wholly independent entities cite or rely on the Payette Principles to some extent." *See id.* Using the "fruit of the poisonous tree" analogy, Defendants request clarification on the Forest Service's ability to rely on these later studies, given their references to and/or reliance upon the tainted Committee findings.

At the outset, it should be mentioned that, in opposing Plaintiffs' Motion for Summary Judgment, Defendants' counsel indicated that the Committees served as a clearinghouse for existing research on disease transmission between sheep populations. *See infra* at p. 7. If true, it is not obvious to the Court why this same research cannot be cited and relied upon in any Final SEIS and ROD. Subsequent reports, however, drawing support from the Committee reports present another matter, thus highlighting the second component of Defendants' Motion to Clarify.

Because this Court has already determined that the Committees' findings violate FACA and/or NFMA, it would seem inconsistent to now allow the Final SEIS and ROD to ignore this ruling by citing favorably those authorities *relying* wholly or substantially upon these same Committee findings. However, a

**MEMORANDUM DECISION AND ORDER - 9**

distinction must be drawn between those later materials' citation to, rather than reliance upon, the Committees' conclusions.  A mere citation to authority as consistent support for a given proposition should not operate to infect that authority's ability to be referenced as justification for a certain position.  In contrast, the reliance on such authority (without any independent basis for the conclusions reached) cannot overcome that underlying authority's shortcomings. This same rationale will be applied here.

Materials generated after the Payette Principles were established will not be excluded outright.  Only those materials that rely specifically upon the Payette Principles and RADT reports and provide the foundation for any subsequent recommendations should properly be excluded from the Final SEIS and ROD. Materials that only cite to the Payette Principles and RADT reports, while independently reaching conclusions that may nonetheless track the Payette Principles themselves are less problematic from the Court's perspective and, as a result, can be relied upon by the Forest Service in later agency decisions, including the Final SEIS and ROD.

This is admittedly an imperfect result.  However, it would be impractical for the Court to comment on each and every post-Payette Principles report, blessing certain ones, while excluding others; that is not the Court's province.  Rather, this

**MEMORANDUM DECISION AND ORDER - 10**

decision is intended to provide direction to the Forest Service when it comes to supporting its final agency decision on the issues surrounding this action.  As mentioned before, the final arbiter of the actual substance of the Final SEIS and ROD is the Forest Service, not the Court.

## ORDER

Based upon the foregoing reasons, it is HEREBY ORDERED that Defendants' Motion to Clarify Court's Order (Docket No. 39) is GRANTED, but only to the following extents:

1.    The Forest Service may not rely upon the Committees' findings and/or conclusions in reaching future agency decisions.  If the Final SEIS and ROD cannot be drafted without relying upon those portions of the Draft SEIS that relied solely, or primarily, upon Committees' findings and/or conclusions, the Final SEIS and ROD cannot be based upon the Draft SEIS.  However, if, in responding to the Draft SEIS and public comments, the Final SEIS and ROD can be drafted independent of the Committees' recommendations, the Final SEIS and ROD can be based upon the Draft SEIS.

2.    Materials relying specifically upon the Payette Principles and RADT reports and providing the foundation for any subsequent recommendations are excluded from the Final SEIS and ROD.  However, materials that only cite to the

**MEMORANDUM DECISION AND ORDER - 11**

Payette Principles and RADT reports, while independently reaching conclusions

relating to disease transmission between domestic and bighorn sheep populations

may be cited by the Forest Service in later agency decisions.

DATED:  **November 9, 2009**



_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 12**