WENDY J. OLSON, IDAHO STATE BAR NO. 7634
UNITED STATES ATTORNEY
**CHRISTINE G. ENGLAND, CALIFORNIA STATE BAR NO. 261501**
**ASSISTANT UNITED STATES ATTORNEY**
**JOANNE P. RODRIGUEZ, IDAHO STATE BAR NO. 2996**
**ASSISTANT UNITED STATES ATTORNEY**
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1414
Email: Christine.England@usdoj.gov; Joanne.Rodriguez@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO WOOL GROWERS ASSOCIATION, ET AL.,<br><br>       Plaintiff,<br><br>   v.<br><br>THOMAS VILSACK, ET AL.,<br><br>       Defendants. | Case No. 1:08-CV-00394-BLW<br><br>**GOVERNMENT'S OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER FOR CONTEMPT** |

**GOVERNMENT'S OPPOSITION TO**
**PLAINTIFFS' MOTION FOR ORDER FOR CONTEMPT**

## INTRODUCTION

The Government opposes Plaintiffs' Motion for an Order Holding it in Contempt (ECF No. 58). The Forest Service did not violate this Court's 2009 order in *Idaho Wool Growers Ass'n v. Schafer*, 637 F. Supp. 2d 868 (D. Idaho 2009) ("*Wool Growers I*") or *Idaho Wool Growers Ass'n v. Schafer*, 2009 WL 3806371 (D. Idaho 2009) ("*Wool Growers II*").

In 2009, this Court ordered that the Forest Service could not rely on the "findings and/or conclusions" of certain Payette National Forest committees in reaching any future agency decisions. The Court clarified that its order did not apply to the Forest Service's use of the underlying science contained in those committees' reports. The Shoshone National Forest complied with those Orders and did not rely on any of the findings or conclusions contained in the Payette committees' reports in deciding to ban domestic sheep and goats from certain areas of the Shoshone National Forest. Instead, the Shoshone National Forest relied on an enormous body of scientific literature (much of which post-dated the Payette committees' reports), along with its own independent analysis.

Plaintiffs string together a misleading set of quotations in which the Shoshone National Forest cited the Payette committee reports. Plaintiffs' contentions read the Shoshone citations in a vacuum. When read in context, each of the Shoshone National Forest's citations to the Payette committee reports is based on the underlying science and literature, not on any independent finding or conclusion of the Payette committees. The Shoshone National Forest's consideration of the Payette committee reports thus comports with this Court's orders in *Wool Growers I and II*. Plaintiffs' motion for an order holding the Government in contempt should be denied.

## BACKGROUND

### A.  Procedural History of the Payette National Forest Dispute

In 2005, the Payette National Forest established two expert panels to evaluate and assess

the risk of disease transmission from domestic sheep to bighorn sheep in the Payette National

Forest:  the "Payette RADT Committee" and the "Payette Principles Committee," (together, the

"Payette Committees").  *Wool Growers I* at 871.  The Payette RADT Committee issued *Risk*

*Analysis of Disease Transmission Between Domestic Sheep and Bighorn Sheep on the Payette*

*National Forest*, on February 6, 2006 (the "Payette RADT Report," Pls.' Ex. 3).  The Payette

Principles Committee issued a *Summary of the Science Panel Discussion*, summarizing their

November 2, 2006 meeting (the "Payette Principles Summary," Pls.' Ex. 4, and together with the

Payette RADT Report, the "Payette Committee Reports").  This Court found that the Payette

Committees were advisory committees in violation of the Federal Advisory Committee Act

("FACA").  To remedy the FACA violation, the Court held that "the Committees' findings

and/or conclusions are not to be relied upon by the Forest Service with respect to any future

agency decisions."  *Wool Growers I* at 880.  The Court subsequently clarified its order because

"ordering that the Committees' findings not be relied upon in future Forest Service

determinations, may not be without some question in its practical application."  *Wool Growers II*

at *2.  Recognizing the difference between a "mere citation to authority" and "reliance on such

an authority," the Court explained that in later agency decisions, the Forest Service may rely on

the science underlying the Reports.  *Id.* at *3-4.

Following the Court's clarification order, the Payette National Forest released its Final

Supplemental Environmental Impact Statement.  *Idaho Wool Growers Ass'n v. Vilsack*, 7 F.

Supp. 3d 1085 (D. Idaho 2014) (*Wool Growers III*).  Idaho Wool Growers (along with other

plaintiffs) again sued the Forest Service, claiming that the Forest Service improperly relied on

the findings and conclusions of the Payette RADT Committee for its "principal assumption . . .

that direct contact between domestic sheep and bighorn sheep results in a high likelihood of

disease transmission to bighorn sheep and disease outbreaks in local bighorn sheep herds." *Id.* at 1100. The Court rejected the Wool Growers' arguments, finding that the Forest Service "relied primarily on their extensive review of disease transmission research and literature to substantiate the link." *Id.* The Court further explained that "[t]his court's previous orders permit 'the Forest Service's use of the underlying science that may exist to support the Committees' recommendations.' Defendants' 'principal assumption' satisfies that 'underlying science' criterion." *Id.* (quoting *Wool Growers II*).

**B.    Factual Background of This Dispute**

In 2009, the Shoshone National Forest (located in Wyoming) re-initiated a Forest Plan Revision. During public comment, the Wyoming Game and Fish Department raised concerns about the risk of disease transmission from domestic goats to bighorn sheep. Harper Decl. ¶ 8. In 2012, the Shoshone National Forest prepared a draft 2012 *Risk Analysis of Disease Transmission Between Domestic Sheep and Goats and Rocky Mountain Bighorn Sheep* (the "2012 Shoshone RADT Report") and a final 2013 *Risk Analysis of Disease Transmission Between Domestic Sheep and Goats and Rocky Mountain Bighorn Sheep* (the "2013 Shoshone RADT Report"). Harper Decl. ¶ 9 and Exhibits 1 and 9.

In preparing the 2012 Shoshone RADT Report, the Shoshone National Forest reviewed current scientific information regarding disease transmission and methodologies to assess the risk of disease transmission. Harper Decl. ¶ 14. The existing scientific literature spanned 37 years and included 21 publications and citations that post-dated the Payette Committee Reports. *Id.* In 2012, coordinating with the Wyoming Game and Fish Department, the Shoshone National Forest prepared a qualitative analysis to determine the likelihood of contact and disease transmission from domestic sheep and goats to bighorn sheep in the Shoshone National Forest. *Id.* ¶¶ 14-16. The 2012 Shoshone RADT Report concluded that the risk of disease transmission

between bighorn sheep and domestic sheep and goats was very low to low.  *Id.* ¶ 17.

In January 2013, the quantitative model, "Bighorn Sheep Risk of Contact Tool" became available.  Harper Decl. ¶ 18.  The Shoshone National Forest then updated the 2012 Shoshone RADT Report to incorporate a quantitative analysis.  *Id.* ¶ 19.  The quantitative model (and the 2013 Shoshone RADT Report) confirmed that the risk of disease transmission from domestic sheep and pack goats to bighorn sheep was very low to low.  *Id.* ¶ 20.  However, because of the high conservation value of Shoshone National Forest native bighorn sheep and the concern that even one disease transmission could be catastrophic to a bighorn sheep herd, the Shoshone National Forest determined that any risk of contact was not acceptable.  *Id.* ¶ 21.  The Shoshone National Forest closed all occupied core native bighorn sheep habitat to domestic goats.  *Id.*

In February 2015, the Shoshone National Forest amended the 2013 Shoshone RADT Report to address instructions from the Chief of the Forest Service in response to objections to the Shoshone National Forest's Final Environmental Impact Statement (the "2015 Shoshone RADT Amendment").  The Shoshone National Forest reviewed and incorporated nine additional scientific publications discussing disease transmission from domestic sheep and goats to bighorn sheep, all of which post-dated the Payette Committee Reports.  Wilder Decl. ¶ 13 and Ex. 20.

In preparing the 2012 and 2013 Shoshone RADT Reports, the Shoshone National Forest was aware of this Court's orders in *Wool Growers I* and *Wool Growers II* (together, the "Court's 2009 Orders").  Harper Decl. ¶ 22.  After this Court's decision in *Wool Growers I*, the Deputy Chief of the Forest Service sent a memorandum to all Regional Foresters, Station Directors, Area Director, IITF Director, Deputy Chiefs and Washington Office Directors, advising them of this Court's ruling.  Harper Decl. ¶ 23and Exhibit 11.  The Shoshone National Forest was thus aware that those orders prohibited the Forest Service from relying on the Payette Committees'

**GOVERNMENT'S OPPOSITION TO**
**PLAINTIFFS' MOTION FOR ORDER FOR CONTEMPT - 4**

"findings and conclusions in future decisions" and that the Forest Service was not prohibited

from relying on the underlying science and methodologies supporting the Payette Committees'

recommendations.  Harper Decl. ¶ 22.  The Shoshone National Forest did not rely the findings

and conclusions of the Payette Committee Reports in preparing the 2012 and 2013 Shoshone

RADT Reports or the 2015 Shoshone RADT Amendment.  Harper Decl. ¶ 24.

### C.  Plaintiffs' Allegations that the Shoshone National Forest Relied on the "Findings and/or Conclusions" of the Payette Committee Reports

Plaintiffs contend that the Forest Service relied on the Payette Committee Reports to

prepare the 2012 Shoshone RADT Report and that the Forest Service then used the 2012

Shoshone RADT Report to ban domestic sheep and goats from portions of the Shoshone

National Forest.  Pls.' Memo. at 2-3.  As evidence, Plaintiffs identify four places in which the

2012 Shoshone RADT Report cites the Payette Committee Reports:

- Page 3:  "Because of these impacts on both survival and recruitment, pneumonia outbreaks can have significant long-term impacts on bighorn sheep populations."  USFS 2006a; USFS 2010.

- Page 4:  "Not all pasteurellosis epidemics in bighorn sheep can be attributed to contact with domestic sheep."  USDA FS 2006b.

- Page 12:  Because of the lack of quantitative models available to predict likelihood of disease outbreak in bighorn sheep populations due to potential contact with domestic sheep or goats (including pack goats),the same basic outcomes with the addition of domestic pack goats, identified by the Payette National Forest (USDA Forest Service 2006a) and used in the Payette's risk assessment are utilized in this risk assessment.

- Page 13:  Although the foray distance for bighorn rams on the Shoshone is not known, the data compiled by the Payette National Forest (USFS 2006a) could be used to represent the potential foray distance on the Shoshone.  They found that most sheep forayed from 0-26 km outside of their core home range with the longest foray being 35 km.

Plaintiffs also provide two tables of "similarities" between the Payette Committee Reports and

the 2012 Shoshone RADT Report.  Pls.' Exhibits 14 and 17.  As explained in more detail below

and in the Declaration of Joel Harper, although the Reports are similar because they use some of

the same underlying science, none of these citations or similarities show reliance on the "findings and/or conclusions" of the Payette Committees.

Plaintiffs offer no evidence that the Shoshone Land Management Plan Revision ("Shoshone LMP"), the Shoshone Final Environmental Impact Statement ("Shoshone FEIS"), or the Record of Decision for the Land Management Plan Revision ("Shoshone ROD") relied directly on the Payette Committee Reports. Nor can they: none of those decision documents even cite the Payette Committee Reports. Plaintiffs claim is further removed. They argue that the decision documents rely on the *Shoshone* RADT Report. That Report then includes the four citations listed above. Thus, they assert that the decision documents "ban[ned] domestic sheep and goats (including packgoats) on the Shoshone [National Forest]" by relying on the Shoshone RADT Report, which in turn cited Payette Committee Reports four times. Pls.' Memo. at 4.

## LEGAL STANDARD

Under Rule 70, the Court may find a party in contempt for failure to comply with a court order requiring a "specific act." Fed. R. Civ. P. 70; *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146 (9th Cir. 1983) ("A court has power to adjudge in civil contempt any person who willfully disobeys a *specific and definite* order requiring him to do or to refrain from doing an act."). A party "should not be held in contempt if his action 'appears to be based on a good faith and reasonable interpretation of the [court's order].'" *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (quoting *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982)). "'Substantial compliance' with the court order is a defense to civil contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply." *Id.* (quoting *Vertex*, 689 F.2d at 891 and citing *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1378–79 (9th Cir. 1986)); *see also* Karl

Oakes, 11 Fed. Proc., L. Ed. § 31:79 (2015) ("Where a court order is clear and unambiguous, clear and convincing proof of noncompliance is provided, and the noncomplying party has failed to diligently attempt compliance in a reasonable manner, the noncomplying party may be held in civil contempt."); *Kahmann v. Reno*, 967 F. Supp. 731, 741 (N.D.N.Y. 1997) (same).

Plaintiffs must prove by "clear and convincing" evidence that the Forest Service violated a specific and definite order and that the Forest Service's interpretation of and attempt to comply with that order were not reasonable. *In re Dual-Deck Video*, 10 F.3d at 695. This standard is stricter than the preponderance of the evidence standard. *Pate v. Columbia Mach., Inc.*, 930 F. Supp. 451, 466 (D. Idaho 1996). Plaintiffs must provide evidence "which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 285 (1990); *see In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992) (applying *Cruzan* definition of "clear and convincing evidence" to disbarment of an attorney).

## ARGUMENT

## I.     The Forest Service did not violate this Court's 2009 Order.

To succeed on a motion for civil contempt, the moving party must "show by clear and convincing evidence that [the nonmoving party] violated the [court order] beyond substantial compliance, and that the violation was not based on a good faith and reasonable interpretation of the [order]." *Perez v. RMRF Enterprises, Inc.*, 2014 WL 3869935, at *2 (N.D. Cal. Aug. 6, 2014) (quoting *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322 (9th Cir. 1997)). Plaintiffs here cannot make this showing because the Forest Service substantially complied with this Court's 2009 Orders, based on a good faith and reasonable interpretation.

**GOVERNMENT'S OPPOSITION TO**
**PLAINTIFFS' MOTION FOR ORDER FOR CONTEMPT - 7**

*Wool Growers I* prohibited the Forest Service from relying on the Payette Committees' "findings and/or conclusions." *Wool Growers II* clarified that this holding "has no effect on the Forest Service's use of the underlying science that may exist to support the Committee's recommendations." *Wool Growers II* at *3. In preparing the 2012 and 2013 Shoshone RADT Reports, the Forest Service did not rely on the Payette Committee Reports' "findings and/or conclusions." It relied on the underlying science summarized and discussed in those reports. Likewise, in relying on the Shoshone RADT Reports, citing more than 70 different publications, to make its ultimate decision banning domestic sheep and goats, the Forest Service did not rely on the Payette Committee's findings and conclusions

### A. The 2012 Shoshone RADT Report citations do not rely on the Payette Committees' "findings and/or conclusions."

As described above, Plaintiffs have identified four instances in which the 2012 Shoshone RADT Report cites the Payette Committee Reports. Plaintiffs assert that these citations show that the Shoshone National Forest relied on the Payette Committees' findings and/or conclusions in "banning domestic sheep and goats (including packgoats) in the Shoshone [National Forest]." Pls.' Memo. at 14. But the citations, read in context, do not demonstrate that the Forest Service failed to "substantially comply" with this Court's 2009 Orders. In fact, none of the four citations are to findings or conclusions. Each citation is to the underlying literature that discusses or studied disease transmission between bighorn sheep and domestic sheep and goats.

Nor is a mere citation to authority equivalent to reliance. As this Court explained: "A mere citation to authority as consistent support for a given proposition should not operate to infect that authority's ability to be referenced as justification for a certain position. In contrast, the reliance on such authority (without any independent basis for the conclusions reached) cannot overcome that underlying authority's shortcomings." *Wool Growers II* at *4. As shown

**GOVERNMENT'S OPPOSITION TO**
**PLAINTIFFS' MOTION FOR ORDER FOR CONTEMPT - 8**

below, the Shoshone National Forest's citations to the Payette Committee Reports do not

demonstrate reliance "without any independent basis" on those Committees' findings or

conclusions.  They do, however, rely on the underlying science—as they should

> 1.    **Multiple sources support the 2012 Shoshone RADT Report's first citation to the Payette Committees Report.**

The 2012 Shoshone RADT Report first cites the Payette RADT Report on page 3 and

states: "Because of these impacts on both survival and recruitment, pneumonia outbreaks can

have significant long-term impacts on bighorn sheep populations.  USFS 2006a; USFS 2010."[1]

Harper Ex. 9 at 3.  This citation does not violate the Court's 2009 Orders for at least two reasons.

First, this statement is not a finding or conclusion of the Payette Committees.  Rather, it

is a summary of the underlying scientific literature regarding the impacts of pneumonia on the

survival and recruitment of bighorn sheep populations.  The science underlying the Payette

RADT Report may be relied upon by the Forest Service.  Thus, the citation does not violate the

Court's 2009 Orders.  *See Wool Growers II* at *3; *Wool Growers III* at 1100.

Second, this quote is a small part of a larger paragraph in the 2012 Shoshone RADT

Report.  The paragraph discusses the issue of the bighorn sheep's susceptibility to pneumonia

and the impacts on lamb survival and recruitment.  And it contains ten citations to scientific

literature, other than the Payette RADT Report, three of which post-date the Payette RADT

Report.  Harper Ex. 9 at 3.  At the very least, this shows an independent basis for the statement

made in the 2012 Shoshone RADT Report.

> 2.    **Underlying science supports the 2012 Shoshone RADT Report's second citation to the Payette Committee Reports.**

The 2012 Shoshone RADT Report cites to the Payette Principles Summary for the

---

[1]    Plaintiffs also cite this passage in their Exhibit 14, entitled "Table of Shoshone RADT Report Passages Copied Directly from the Payette RADT Report."

following statement:  "Not all pasteurellosis epidemics in bighorn sheep can be attributed to

contact with domestic sheep." Harper Ex. 9 at 4.  In the 2012 Shoshone RADT Report, this

sentence is followed by:  "Because some potentially pathogenic *Pasteurellance* and other

pathogens are endemic in some wild sheep populations, wildlife managers should examine the

implications of interactions between different herds of wild sheep (CAST 2008)."  Thus, the

CAST citation (Council for Agricultural Science and Technology) also supports the statement

that "[n]ot all pasteurellosis epidemics in bighorn sheep can be attributed to contact with

domestic sheep."  Again, the 2012 Shoshone RADT Report had an independent basis to conclude

that not all pastuerellosis can be attributed to contact with domestic sheep [2]

More fundamentally, Plaintiffs challenge the Shoshone National Forest's citation to the

Payette Principles Summary's statement that "[n]ot all pasteurellosis epidemics in bighorn sheep

can be attributed to contact with domestic sheep," but Plaintiffs have failed to show that the

Shoshone National Forest relied upon that statement in reaching its decision to ban pack goats

from the Shoshone National Forest.  *Wool Growers II* at *2.

### 3.    The 2012 Shoshone RADT Report's third citation to the Payette Committee Reports does not reference a finding or conclusion.

The third citation relied on by Plaintiffs states:

Because of the lack of quantitative models available to predict likelihood of
disease outbreak in bighorn sheep populations due to potential contact with
domestic sheep or goats (including pack goats), the same basic outcomes with the

---

[2]    The Payette Principles Summary does not identify "findings" or "conclusions."  Instead,
it summarizes a panel discussion of the scientific literature.  This example highlights the
difficulty faced by the Forest Service in interpreting this Court's 2009 Orders and how they
apply to two separate Reports, as discussed more fully *infra*, Section II.A.1.

     To the extent that the statement "[n]ot all pasteurellosis epidemics in bighorn sheep can
be attributed to contact with domestic sheep" could be considered a "finding and/or conclusion"
of the Payette Principles Committee *and* the Court determines that the Shoshone National Forest
relied on it in reaching a decision, it cannot be considered more than a technical violation of this
Court's 2009 Orders.  Underlying science also supports the statement.  A "few technical
violations" do not vitiate "substantial compliance."  *In re Dual-Deck Video*, 10 F.3d at 695.

addition of domestic pack goats, identified by the Payette National Forest (USDA Forest Service 2006a) and used in the Payette's risk assessment are utilized in this risk assessment. *See also* Plaintiffs' Exhibit 7, row 1.

Pls.' Ex. 5 at 12. Here, "outcomes" refers to the range of risk; not the result. *See* Pls.' Ex. 3 at 10 (listing potential outcomes); Pls' Ex. 5 at13 (same); *see also infra* note 3.

Plaintiffs claim that "the Forest Service developed a quantitative model to predict the likelihood of disease outbreak in bighorn sheep populations" in 2010, before the 2012 Shoshone RADT Report was issued, so the 2012 Shoshone RADT Report is flawed when it references the "lack of quantitative models available). Pls.' Memo. at 11. The *Payette* National Forest developed its quantitative model in July 2010. *Id.* However, in November 2010, the Forest Service issued a memorandum explaining the challenges that other National Forests might have in applying the Payette quantitative model. Harper Decl. ¶ 11. The memorandum directed other Forests to use other methods to assess the risk of disease transmission until quantitative models could be developed for those Forests. *Id.* The Deputy Chief of the Forest Service, Joel Holtrop, subsequently issued a letter of direction in August 2011, directing Forests that did not have the data to prepare a quantitative analysis, to prepare a qualitative analysis. *Id.* ¶ 12. Based on the Deputy Chief's direction, the Shoshone National Forest prepared a qualitative analysis. *Id.* ¶ 14. In January 2013, the quantitative model, *Bighorn Sheep Risk of Contact Tool*, became available to assess the risk of disease transmission. *Id.* ¶ 18. The Shoshone National Forest used that model to perform a quantitative analysis and updated the 2012 Shoshone RADT Report to reflect it. *Id.* ¶¶ 19-20. Both the qualitative and quantitative analyses reached the conclusion that the risk of disease transmission from domestic sheep and packgoats to bighorn sheep was "very low to low." Harper Decl. ¶¶ 17, 20.

Plaintiffs' Exhibit 17 identifies similarities between the qualitative assessment used by the Payette RADT Committee and the qualitative assessment used in the 2012 Shoshone RADT

**GOVERNMENT'S OPPOSITION TO**
**PLAINTIFFS' MOTION FOR ORDER FOR CONTEMPT - 11**

Report.  There are similarities, and with good reason:  both the 2012 Shoshone RADT Report and the Payette RADT Report used the Lehmkul methodology in preparing the qualitative analysis.  Harper Decl. ¶ 28. *see* Pls.' Ex. 17, rows 3 and 4.  In addition, the specialists conducting the risk assessments were provided with similar materials under that methodology. Pls.' Ex. 17, row 5.  The Court's 2009 Orders did not prohibit the Forest Service from using existing methodologies for assessing risk of disease transmission, even if the Payette RADT Committee used the same method.  The *methodology* was not a finding and/or conclusion of the Payette Committees; it was developed by Lehmkul et al. in 1997.  Harper Decl. ¶ 28.  And based on the Lehmkul methodology, the 2012 Shoshone RADT Report and the Payette RADT Report reached different results.[3]  *Id.*

Plaintiffs also contend that the processes by which the 2012 Shoshone RADT Report and the Payette RADT Report reached their qualitative results was similar.  *See* Pls.' Ex. 17, row 2. While there would be nothing wrong with the use of similar processes, Plaintiffs' Exhibit 17 shows that  the processes actually differed:  the Payette RADT Committee convened a "panel of 6 wildlife biologists," while the Shoshone National Forest consulted with wildlife biologists from the Wyoming Game and Fish Department.  Pls.' Ex. 17, row 2.

Plaintiffs further contend that the 2012 Shoshone RADT Report adopted the same "principal assumption" as the Payette Committees.  Pls.' Memo. at 13-14 and Ex. 17, row 6.  The principal assumption used by both the Shoshone National Forest and the Payette RADT

---

[3]      The Lehmkul method provides a systematic method for determining risk of disease transmission based on five possible outcomes.  Harper Decl. ¶ 28.b.  This method offers no findings or conclusions regarding the risk of contact and the potential for disease transmission without inputting independent and site-specific data from a particular Forest.  *Id.*  Therefore, the outcomes are driven by the information input; if the input changes, so does the outcome.  *Id.* Based on different inputs, the Payette and Shoshone National came to different assessments of risk using the Lehmkul method.  *Id.*.  The Payette outcomes result was determined to be very high risk, whereas the Shoshone National Forest outcomes result was low to very low risk.  *Id.*

Committee is:  "Direct contact between domestic sheep or goats (including pack goats) and bighorn sheep results in a high likelihood of disease transmission to bighorn sheep and disease outbreak in local bighorn sheep herds."  This principle assumption is not a finding and/or conclusion of the Payette Committees and, in fact, is supported by nine pieces of scientific literature.  Harper Decl. ¶ 28.c.  Furthermore, this Court has already rejected that the "principal assumption . . . that direct contact between domestic sheep and bighorn sheep results in a high likelihood of disease transmission to bighorn sheep and disease outbreaks in local bighorn sheep" was a finding and/or conclusion of the Payette Committees:

> Defendants relied primarily on their extensive review of disease transmission research and literature to substantiate ['principal assumption'].  This court's previous orders permit 'the Forest service's use of the underlying science that may exist to support the Committees' recommendations.'  Defendants' 'principal assumption' satisfies that 'underlying science' criterion.

*Wool Growers III* at 1100.  The Forest Service did not rely on any finding or conclusion of the Payette Committees in preparing its qualitative risk analysis.

### 4.    The 2012 Shoshone RADT Report's fourth citation to the Payette Committee Reports is an incorrect citation.

The forth citation relied on by Plaintiffs is on page 13 of the 2012 Shoshone RADT Report and cites to the Payette RADT Report for the following statement:

> Although the foray distance for bighorn rams on the Shoshone is not known, the data compiled by the Payette National Forest (USFS 2006a) could be used to represent the potential foray distance on the Shoshone.  They found that most sheep forayed from 0-26 km outside of their core home range with the longest foray being 35 km.

Pls.' Memo at 9-10; Harper Ex. 9 at 13.  This is an incorrect citation.  The Payette Committee Reports do not address foray distances.  Harper Decl. n.2; *see generally* Payette RADT Report (Pls.' Ex. 3) and Payette Principles Summary (Pls.' Ex. 4).  The citation for this statement should have been to the Payette National Forest's 2010 Record of Decision Land and Resource

**GOVERNMENT'S OPPOSITION TO**
**PLAINTIFFS' MOTION FOR ORDER FOR CONTEMPT - 13**

Management Plan.  Harper Decl. n.2.  This Court's 2009 Orders do not prohibit the Forest

Service from relying on the Payette National Forest's 2010 Record of Decision Land and

Resource Management Plan.  Because nothing in the Payette Committee Reports addresses foray

distances, the Shoshone National Forest could not have relied on the Payette Committee Reports'

"findings and/or conclusions" in evaluating Shoshone bighorn sheep foray distances.

> **B.     None of the passages that Plaintiffs contend were copied from the Payette RADT Report are findings or conclusions of that Report.**

In Exhibit 14, Plaintiffs identify five passages from the 2012 Shoshone RADT Report

that they allege are "copied directly from the Payette RADT Report."  None of these passages

show that the Shoshone National Forest relied on the Payette Committee Reports' findings or

conclusions in any agency decision.

In the first quotation comparison, Plaintiffs suggest that because the Forest Service's

*procedure* for conducting its risk analysis was similar, the Shoshone National Forest relied on

the Payette RADT Report.[4]  These quotes simply set forth the direction each Forest relied on to

conduct its analysis.  Notably the Payette and Shoshone National Forests received different

direction.  That direction is not a finding or conclusion of the Payette RADT Report.

In the second quotation which Plaintiffs contend that the 2012 Shoshone RADT Report

copied from the Payette RADT Report, the differences are underlined below:

| Payette RADT Report | 2012 Shoshone RADT Report |
|---|---|
| "The analysis was conducted at the spatial | "The analysis was conducted at the spatial |

---

[4]     The Payette RADT Report provides:  "Following direction from the Chief's Reviewing Officer, the Payette NF conducted an analysis of the effects of disease transmission from domestic sheep grazed on the forest to bighorn sheep populations occurring within and near the Payette NF."  Pls.' Ex. 14, row 1.  The 2012 Shoshone RADT Report provides "Following direction from the Deputy Chief, the Shoshone staff conducted an analysis of the effects of disease transmission from domestic sheep and goats on the Forest to bighorn sheep populations occurring within and near the Shoshone."  *Id.*

**GOVERNMENT'S OPPOSITION TO**
**PLAINTIFFS' MOTION FOR ORDER FOR CONTEMPT - 14**

| | |
|---|---|
| scale of the Payette NF . . . . The analysis consists of 3 parts:  1) a review of the scientific literature on disease transmission from domestic sheep to bighorn sheep and the impacts that disease has on bighorn sheep populations; 2) <u>an evaluation of population data available for bighorn populations located within and adjacent to the Payette's boundaries</u>; and 3) an <u>expert panel</u> assessment of risk of <u>disease transmission</u> from each of the Payette's domestic sheep allotments to nearby bighorn sheep populations." P. 1. | scale of the Shoshone and consists of <u>four parts</u>:  (1) a review of the scientific literature on disease transmission from domestic sheep and goats to bighorn sheep and the impacts that disease has on bighorn sheep populations; (2) <u>an evaluation of domestic sheep and goat use on the Shoshone</u>; (3) <u>an evaluation of population data available for bighorn populations located within and adjacent to the Shoshone's boundaries</u>; and (4) and an <u>assessment of risk of disease for each of the Shoshone's bighorn sheep herds from domestic sheep and goat use on the Forest</u>."  P. 1. |

The only similarity between the Reports is that both Forests conducted a review of the scientific literature on disease transmission from domestic sheep to bighorn sheep.  Such a review lies at the heart of any risk assessment.  A statement of what the analysis would entail is not a finding or conclusion; it is a description of the steps that would be taken in order to reach a finding and conclusion.  Furthermore, the steps identified by the 2012 Shoshone RADT Report are consistent with the Deputy Chief's August 2011 letter of direction.  Harper Decl. ¶ 27.b.

In the third quotation, Plaintiffs point to the fact that both the Payette RADT Report and the 2012 Shoshone RADT Report summarized the scientific literature review in the same way. *See* Pls.' Ex. 14; *see also* Pls.' Memo at 8-9.  The quote contained in the 2012 Shoshone RADT Report summarizes seven separate pieces of scientific literature regarding the effects of disease on bighorn sheep populations.  Harper Decl. ¶ 27.c.  The quote contained in the Payette RADT Report also summarizes scientific literature; it is not a finding or conclusion.  *See* Pls.' Ex. 3 at 3.

The fourth citation is addressed in Section I.A.1 above.

In the fifth citation, Plaintiffs misquote the 2012 Shoshone RADT Report, indicating that the quoted language comes from the Payette RADT Report, when the 2012 Shoshone RADT Report actually cites the Payette National Forest's 2010 Record of Decision Land and Resource Management Plan.  This Court's 2009 Orders do not address the 2010 Record of Decision.

**GOVERNMENT'S OPPOSITION TO**
**PLAINTIFFS' MOTION FOR ORDER FOR CONTEMPT - 15**

In sum, Plaintiffs' Exhibit 14 does not show that the Shoshone National Forest relied on findings or conclusions of the Payette Committee Reports in any agency decisions.

**C.    The Shoshone National Forest relied on extensive scientific literature in determining that packgoats should not be allowed in certain areas.**

The Shoshone National Forest substantially complied with this Court's 2009 Orders: it did not rely on the "findings and/or conclusions" of the Payette Committees, but conducted its own review of the scientific literature and independent analysis. In preparing the 2012 Shoshone RADT Report on the issue of disease transmission, the Shoshone National Forest (1) reviewed the scientific literature on disease transmission from domestic sheep and goats to bighorn sheep and the impacts that disease has on bighorn sheep populations; (2) evaluated domestic sheep and goat use on the Shoshone National Forest; (3) evaluated population data available for bighorn populations within and adjacent to the Shoshone National Forest's boundaries; and (4) completed a risk assessment for each of the Shoshone National Forest's bighorn sheep herds from domestic sheep and goats use in the Forest. Harper Decl. Ex. 9 at 1. The existing scientific literature reviewed by the Shoshone National Forest spanned 37 years and included more than 70 publications; 21 of those publications post-dated the Payette Committee Reports. Harper Decl. Ex. 9at 16-21; Harper Decl. ¶ 14. The Shoshone National Forest also coordinated with state wildlife agencies, including the Wyoming Game and Fish Department. *Id.*

The Shoshone National Forest updated the 2012 analysis in 2013, when the quantitative tool, *Bighorn Sheep Risk of Contact Tool*, became available. Harper Decl. ¶ ¶ 17-19. The Shoshone National Forest further amended the analysis in 2015, when it reviewed and analyzed nine additional scientific publications addressing the risk of disease, all of which post-dated the Payette RADT Report. Wilder Decl. ¶ 13 and Ex. 20.

Thus, the Shoshone National Forest relied on a great body of scientific literature and its

own independent analysis when it ultimately closed certain areas of the Shoshone National Forest. The Forest concluded that because even one transmission event could be catastrophic to a bighorn sheep herd, no risk of contact was acceptable. So *even though* the Shoshone National Forest concluded that the risk of disease transmission from domestic sheep and packgoats to bighorn sheep was *very low to low*, those animals would be excluded. Harper Decl. ¶ 20-21. The Payette RADT Report concluded, in contrast, that domestic sheep allotments presented a *very high* risk of disease transmission to bighorn sheep. *Id.* ¶ 20.

II.     **The relief Plaintiffs seek is inappropriate and unwarranted.**

        **A.      A contempt order is not justified here.**

Civil contempt "consists of a party's disobedience to a *specific and definite court order* by *failure to take all reasonable steps* within the party's power to comply." *In re Dual-Deck Video*, 10 F.3d at 695. Plaintiffs cannot prove, by clear and convincing evidence that (1) the Court's 2009 Orders are sufficiently specific and definite to support a finding of contempt in this case; or (2) that the Forest Service failed to take all reasonable steps to comply.

        **1.      This Court's 2009 Orders are not sufficiently specific or definite to support a finding of contempt in this case.**

"Civil contempt is appropriate only when a party fails to comply with a court order that is both specific and definite. Thus, to support a contempt motion, the order alleged to have been disobeyed must be sufficiently specific." *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989). In *Wool Growers I*, this Court ordered that the Payette Committees' "findings and/or conclusions are not to be relied upon by the Forest Service with respect to any future agency decisions." *Wool Growers I* at 880. The Court did not identify any specific "findings and/or conclusions" in the Payette Committee Reports, and neither Report includes a section entitled "findings and conclusions." As discussed above, the Payette Principles Summary does

not include any "findings and/or conclusions," but represents a summary of a panel discussion. Pls.' Ex. 4.  Among other sections, the Payette RADT Report includes a sections entitled "Results," "Discussion," and a "Conclusions."  Pls.' Ex. 3.  The Forest Service did not rely on or cite to any of these sections in the 2012 Shoshone RADT Report.  Harper Decl. ¶ 24.

Thus, the Court left it to the Forest Service to apply the Court's 2009 Orders to two separate reports and to determine which statements in those reports could not be relied upon in future agency decisions.  Because the Court did not identify the findings or conclusions, the Court's 2009 Orders are not sufficiently specific to support a contempt finding under these circumstances.

In *Balla v. Idaho State Board of Corrections*, the Ninth Circuit held that an order requiring the Idaho Board of Correction to implement a "'basic' program for identifying, treating, and supervising suicidal prisoners," was "too general to be enforced through a contempt motion."  *Balla v. Idaho State Bd. of Corr.*, 869 F.2d at 465.  In another example, in *Fahmy v. Jay-Z*, the court held that an order directing defendants to "respond to discovery requests that go to both the manner of advertising concerts as well as the revenues derived therefrom" was not "sufficiently specific to provide the foundation for a finding of contempt."  *Fahmy v. Jay-Z*, No. 07-CV-5715, 2013 WL 2897869, at *2 (C.D. Cal. June 10, 2013).  Consistent with these examples, although this Court provided direction, it did not set forth a bright-line rule, supporting a contempt finding in a situation as nuanced as this.

This Court has already acknowledged the difficulty for the Forest Service in interpreting its July 2009 Order.  On a request for clarification from the Forest Service, the Court recognized that the Court's order

> that the Committees' findings not be relied upon in future Forest Service determinations, may not be without some question in its practical application.

**GOVERNMENT'S OPPOSITION TO**
**PLAINTIFFS' MOTION FOR ORDER FOR CONTEMPT - 18**

> Indeed, in attempting to *follow* . . . the Court's Memorandum Decision and Order, [the Government Defendants] point to certain circumstances that may potentially collide with the overall thrust of the Court's ruling.

*Wool Growers II* at n.2.   Given the difficulty in practical application of the Court's 2009 Orders, the Court should not exercise its contempt power here.

### 2.    The Forest Service made every reasonable effort to comply with this Court's 2009 Order.

The Forest Service took all reasonable steps to comply with this Court's 2009 Orders; it did not willfully violate those Orders, but considered those Orders and followed them.

On August 28, 2009, the Deputy Chief of the Forest Service sent a memorandum to all Regional Foresters, Station Directors, Area Director, IITF Director, Deputy Chiefs and Washington Office Directors, advising them of this Court's ruling.  Harper Decl. ¶ 23 and Exhibit 11.  The memorandum directed all Forest Service units to "comply with the Court's Order . . . that the Committees' findings and/or conclusions are not to be relied upon by the Forest Service with respect to any future agency decisions."  *Id.*

The Shoshone National Forest was aware that the Court's 2009 Orders prohibited the Forest Service from relying on the Payette Committees' "findings and conclusions in future decisions" and that the Forest Service was not prohibited from relying on the underlying science and methodologies supporting the Payette Committees' recommendations.  Harper Decl. ¶ 22.  In compliance with the Court's 2009 Orders and the direction from the Deputy Chief, in preparing its 2012 Shoshone RADT Report, the Shoshone National Forest did not consider or focus on the sections of the Payette RADT Report entitled "results," "discussion," or "conclusions."  *Id.* ¶ 24.  In the 2012 Shoshone RADT Report's few citations to the Payette Committee Reports, it cited the underlying science.  This reasonable effort precludes a finding of contempt.

### B.    The other relief sought by Plaintiffs should be denied.

**GOVERNMENT'S OPPOSITION TO
PLAINTIFFS' MOTION FOR ORDER FOR CONTEMPT - 19**

In addition to seeking an order of contempt, Plaintiffs also ask this Court to "[h]old unlawful and set aside the Forest Service's [2012] Shoshone RADT Committee and its Report" and to "hold unlawful and set aside the Forest Service's Shoshone LMP, ROD, and FEIS to the extent they rely on the Shoshone [2012] RADT Committee and its Report."  Pls.' Memo at 19. Plaintiffs cannot justify this relief.  Plaintiffs have failed to show that the Shoshone LMP, ROD or FEIS, rely on any of the contested statements in the 2012 Shoshone RADT Report or that the statements in the 2012 Shoshone RADT Report were improper.  Plaintiffs may appropriately challenge the Shoshone LMP, ROD or FEIS directly by bringing an action under the Administrative Procedure Act in Wyoming with a full record.  This Court should decline their current collateral attack on a decision in another state and Circuit.

Plaintiffs also seek sanctions against the Forest Service to (1) compensate Plaintiffs for their attorneys' fees in bringing this action; (2) compensate Goatpackers for their costs incurred to prepare comments and objections to the Shoshone National Forest's actions; and (3) "coerce [the Forest Service's] obedience to the Court's [2009] Orders."  Sanctions of any kind are particularly inappropriate here, given the Forest Service's efforts to interpret and comply with this Court's 2009 Orders.  Furthermore, Plaintiffs have presented no evidence that the Forest Service requires "coercion" to comply with this Court's orders.  To the contrary, the evidence demonstrates that the Forest Service has interpreted the Court's 2009 Orders in good faith and substantially complied with them.[5]

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for an order holding the Forest Service in contempt and all of the relief sought therein.

---

[5]     The attorneys' fees and monetary sanctions sought by plaintiffs are also barred.  The Government will address this issue upon any motion/application for attorneys' fees.

**GOVERNMENT'S OPPOSITION TO**
**PLAINTIFFS' MOTION FOR ORDER FOR CONTEMPT - 20**

Respectfully submitted this 17th day of August, 2015.

WENDY J. OLSON
UNITED STATES ATTORNEY


/s/ Christine G. England
CHRISTINE G. ENGLAND
Assistant United States Attorney

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 17th, 2015, the **GOVERNMENT'S**

**OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER FOR CONTEMPT AND**

**SUPPORTING DECLARATIONS** were electronically filed with the Clerk of the Court using

the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

> William Gerry Myers, III
> Wmyers@hollandhart.com
>
> Andrew A Irvine
> andy@andrewirvinelaw.com

And, I hereby certify that the following listed non-registered CM/ECF participants were

served by:

> ☒ United States Mail, postage prepaid
> ☐ Federal Express
> ☐ Hand-delivery
> ☐ Facsimile transmission (fax)

*None*

> /s/ Jessica Black
> Jessica Black, Legal Assistant

**GOVERNMENT'S OPPOSITION TO**
**PLAINTIFFS' MOTION FOR ORDER FOR CONTEMPT - 22**